[No. 77570-2. En Banc.]
Argued May 9, 2006. Decided March 1, 2007.

VALLEY/50TH AVENUE, LLC, *Petitioner*, v. RANDALL STEWART, as *Trustee*, ET AL., *Respondents*.

---

738

*Steven B. Tubbs*, for petitioner.
*James D. Hamilton*, for respondents.

¶1 CHAMBERS, J. — A law firm, Morse & Bratt (Firm), obtained a deed of trust from a client, Valley/50th Avenue, LLC (Valley), in part to secure existing attorney fees and costs owed by another client, Neil Rose. Rose failed to pay his fees and the Firm attempted to foreclose. Valley resisted, asserting, among other things, that the agreement violated the Rules of Professional Conduct (RPCs). The trial court concluded that even if the Firm did violate the RPCs, such violations did not affect the enforceability of the deed

of trust and granted summary judgment to the Firm. The Court of Appeals substantially agreed. We conclude that there are genuine issues of material fact that prevent summary judgment and reverse and remand for further proceedings.

## FACTS

¶2 Rose has owned and operated several businesses in Clark County. For example, Ercoup, LLC; Fouga, LLC; PV-2 Harpoon, LLC; and Aviana Corporation were formed for the purpose of owning Rose's aircraft, and Canica Export Corporation; Canica Crushers, Inc.; Impact General Contracting, Inc.; United Crushers, Inc.; Impact Alloys Corporation, CRM/CCM Engineering; and Impact Alloys Foundry were formed to facilitate Rose's rock crushing equipment business. Apparently, in his own name, Rose purchased property at 10517 NE 50th Avenue, Vancouver, Washington, sometime prior to 1980 and used it to site his rock crushing equipment operation. The Firm performed legal services for each of these entities, including defending Rose and Impact Alloys Corporation in a lawsuit filed in 1997 by the Clyde Corporation.

¶3 In February 1998, the Firm formed Valley/50th Avenue, LLC, at the request of Rose. At the time of formation, Rose was Valley's manager and its sole member. Diane Woolard, an attorney at the Firm, became the registered agent of Valley, and the Firm maintained Valley's ownership records. On May 18, 1998, Rose executed a warranty deed drafted by the Firm transferring his interest in the 10517 NE 50th Avenue property to Valley. On March 19, 1998, Rose transferred 98 percent of Valley's economic units to his two sons, James Rose and Brett Rose, each receiving 49 percent.[1] It appears that the Firm did not draft the

---

[1] The operating agreement defined "Economic Interest" as "a Unit Holder's share of net Profits, net Losses, and other tax items of the Company and distributions of the Company's assets pursuant to this Agreement and the Act, but . . . not includ[ing] any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any

transfer document, did not have it in its files, and did not know about it.

¶4 In 1999, the Firm approached Rose about outstanding legal fees. At the time, Rose owed more than $100,000 in fees and $60,000 in costs.[2] To satisfy the Firm's concerns, Rose signed the representation agreement, promissory note, and deed of trust at issue in this case.

¶5 The representation agreement listed Rose, Impact Alloys Corporation (a defendant in the Clyde Corporation litigation), and the Firm as parties. It is unclear when the agreement was signed, but it carries the effective date of September 1, 1999. The agreement stated the Firm was providing, and had provided, legal services to Rose, Impact Alloys, and to "other businesses or entities in which Clients [Rose and Impact Alloys] have or had interest, or predecessors to those entities or businesses." Clerk's Papers (CP) at 15. It acknowledged that Rose and Impact Alloys were indebted to the Firm for legal services rendered and stated a desire to provide for and secure the payment of current and future obligations owed to the Firm.

¶6 The agreement required delivery of a $300,000 retainer paid by a secured promissory note payable on demand. According to the terms of the agreement, the Firm was barred from demanding payment on the note unless the clients defaulted on any of the agreement's terms, the Firm withdrew from representation or was discharged, or the Clyde Corporation litigation ended. Under the agreement, the clients would execute and deliver to the Firm a deed of trust for the property at 10517 NE 50th Avenue "as security for the performance of this Agreement, for payment and performance of any promissory note executed and delivered by Clients pursuant to this Agreement, and the payment of any obligation now owed or hereinafter incurred by Clients." CP at 17.

---

decision of the Members." Clerk's Papers at 28. A "Unit Holder" was in turn defined as "a Person who is a Member or who holds an Economic Interest but is not a Member." *Id.*

[2] Valley does not claim that the fees were unreasonable.

¶7 The promissory note was secured by "a deed of trust on real property, and other security as set forth in an Agreement between promissors and promissee dated September 1, 1999." CP at 14. The note was signed by "Neil M. Rose, Member," on behalf of Valley and by "Neil M. Rose, Promissor." *Id.* Like the representation agreement, the note lists the effective date as September 1, 1999.

¶8 Similarly, the stated purpose of the deed of trust was to secure the payment of $300,000 on the promissory note, along with the payment of any future advances or loans made to Valley by the Firm. Valley also agreed to pay any costs, fees, or expenses, including attorney fees, incurred by the trustee or the Firm in enforcing obligations secured by the deed. The deed was signed by "Neil M. Rose, Member," on behalf of Valley and by Rose individually, on February 3, 2000. CP at 57.

¶9 At the conclusion of the Clyde Corporation litigation, Rose was left owing a substantial judgment, in addition to more than $300,000 in legal fees to the Firm and $100,000 to outside cocounsel. Rose paid only $75,000 of his attorney fees before defaulting. Subsequently, the Firm sought to foreclose on the property. Valley protested. It raised several defenses, including the theories that Rose's signature on the deed was inadequate to create an enforceable obligation, that he lacked the capacity to pledge Valley's property as collateral for an unrelated legal fee, and that the promissory note and deed of trust were unenforceable against it as violative of the RPCs.

¶10 The parties moved for summary judgment. The trial court found that most of Valley's defenses did not go to the enforceability of the deed of trust and did not reach them. It also ruled that the alleged violations of the RPCs did not render Rose's obligations unenforceable and that Rose had the capacity to pledge Valley's assets, notwithstanding some technical defects in form. In an unpublished opinion, the Court of Appeals agreed, except with respect to the

scope of the fees covered by the agreement.[3] *Valley/50th Ave., LLC v. Stewart*, noted at 128 Wn. App. 1014, 2005 Wash. App. LEXIS 1490.

## ANALYSIS

 ¶11 The only issue we need to decide at this stage is whether the Firm may foreclose on the deed of trust it obtained as security for its revised fee agreement. We engage in the same inquiry as a trial court reviewing the summary judgment motions de novo. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002). Summary judgment is warranted only if " 'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' " *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000) (quoting *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000)).

¶12 Valley contends the deed of trust is invalid for two reasons: first, the deed was created in violation of former RPC 1.7 (1995) and former RPC 1.8 (1993) and, second, the signature on the deed fell short of the requirements of RCW 25.15.150 and therefore failed to bind Valley.

 ¶13 Attorney fee agreements that violate the RPCs are against public policy and unenforceable. *Belli v. Shaw*, 98 Wn.2d 569, 578, 657 P.2d 315 (1983); *Holmes v. Loveless*, 122 Wn. App. 470, 475, 94 P.3d 338 (2004) (citing *Simburg, Ketter, Sheppard & Purdy, LLP v. Olshan*, 97 Wn. App. 901, 909, 988 P.2d 467, 33 P.3d 742 (1999)); *Cotton v. Kronenberg*, 111 Wn. App. 258, 269, 44 P.3d 878 (2002). A fee agreement between a lawyer and a client, revised after the relationship has been established on terms more favorable to the lawyer than originally agreed upon, may be void or voidable unless the attorney shows that the contract was fair and reasonable, free from undue influence, and made

---

[3] The Court of Appeals reversed in part because it found the agreement unclear such that the court could not say as a matter of law that the parties intended to cover the attorney's fees incurred for services unrelated to the Clyde Corporation litigation. The Court of Appeals remanded to the trial court because the question whether the fee agreement covered fees owed for "other matters" presented a genuine issue of material fact.

after a fair and full disclosure of the facts on which it is predicated. *Kennedy v. Clausing*, 74 Wn.2d 483, 491, 445 P.2d 637 (1968) (quoting *Albert v. Munter*, 136 Wash. 164, 175, 239 P. 210 (1925)).

## RPC 1.8

■ ¶14 Valley alleges the Firm violated former RPC 1.8, which forbids transactions between lawyers and their clients unless certain minimum notice is provided, including disclosure and a reasonable opportunity to seek the advice of independent counsel. Business transactions between lawyers and clients are governed by RPC 1.8.

A lawyer who is representing a client in a matter:

(a) Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client consents thereto.

Former RPC 1.8(a). The deed of trust at issue in this case has the character of a business transaction between a law firm and its client. Though described as a fee agreement by the Firm, it was, in fact, relevant to a significant existing debt. A standard fee agreement involves *anticipated* legal fees and an agreement to pay them; in this case, substantial fees were already owed. The relationship was not merely attorney-client; it was also creditor-debtor. Although it was clothed as a fee agreement between an attorney and a client, it was in reality an agreement between a creditor and a debtor. Furthermore, the fee agreement entailed the conveyance of a security interest in the client's property, a transaction absent safeguards specifically prohibited by RPC 1.8(a). Finally, we note the Firm advised its own client

on a method of paying the debt owed to it—a method a disinterested attorney might not have encouraged. Because we conclude the note and deed of trust was more like a business transaction than a fee agreement, the issue then is whether the Firm satisfied the minimum notice, disclosure, and reasonable opportunity to seek the advice of independent counsel required by RPC 1.8.

¶15 Under this rule, the lawyer must establish, " '(1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger'." *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 164, 896 P.2d 1281 (1995) (quoting *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983)). The disclosure which accompanies an attorney-client transaction must be complete. Attorneys, to defend their actions, must prove they complied with the "stringent requirements imposed upon an attorney dealing with his or her client." *McGlothlen*, 99 Wn.2d at 525.

¶16 The burden of proving compliance with RPC 1.8 rests with the lawyer; "an attorney-client transaction is prima facie fraudulent." *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 704, 826 P.2d 186 (1992) (citing *McGlothlen*, 99 Wn.2d at 525). A lawyer must prove strict compliance with the safeguards of RPC 1.8(a); full disclosure, opportunity to consult outside counsel, and consent must be proved by the communications between the attorney and the client. *Johnson*, 118 Wn.2d at 704 (citing *McGlothlen*, 99 Wn.2d at 525).

¶17 A client's sophistication does not relax the requirements of RPC 1.8, though it may be relevant to its satisfaction. We rejected the sophisticated client defense in *Miller*, where we stated, "[e]ven though Ottomeier was an intelligent woman who may have been aware of her financial matters, Miller is not excused from failing to properly

comply with RPC 1.8(a)." *In re Disciplinary Proceeding Against Miller*, 149 Wn.2d 262, 279-80, 66 P.3d 1069 (2003).

██ ██ ¶18 The parties dispute whether Rose had adequate opportunity to seek the advice of independent counsel. The opportunity to seek independent advice must be real and meaningful. It is not enough that at some moment in time an opportunity existed, no matter how brief or fleeting that opportunity might have been. *In re Disciplinary Proceeding Against Haley*, 157 Wn.2d 398, 408, 138 P.3d 1044 (2006). The disclosures and notices required by RPC 1.8 are meaningless unless the client is given a reasonable amount of time to act upon the information disclosed and seek independent counsel. The definition of a "reasonable opportunity" may depend on the circumstances of any given case, but it will always mean more than the mere physical ability to contact an attorney. *E.g.*, *Haley*, 157 Wn.2d at 408. The burden is upon the lawyer to demonstrate that a real and meaningful opportunity to seek independent counsel was afforded to the client. *Johnson*, 118 Wn.2d at 704.

██ ¶19 The exact circumstances, disclosure, and reasonable opportunity of Rose and Valley to seek independent counsel are in dispute.[4] The record reflects that the trial court felt the agreement, note, and deed of trust themselves would satisfy the disclosure requirements of former RPC 1.8.[5] We disagree. These documents alone are

---

[4] According to the Firm, it was Rose who offered Valley's property as security for the promissory note. J.D. Nellor, the Firm's president, testified in his deposition that Rose negotiated the terms of the documents and had brought in a marked-up copy of the agreement, and that Nellor made the changes suggested by Rose in his presence. Nellor also stated he informed Rose that he was entitled to independent counsel in connection with the representation agreement, the promissory note, and the collateral. Nellor testified Rose was employing several different attorneys at the time of these transactions. In his declaration, Rose stated he was visited at home by Ms. Woolard and was told that the Firm would withdraw from the Clyde litigation and any further representation unless he signed the documents. Rose claims the Firm did not give or offer any advice to Valley regarding the proposed arrangements and he did not have an attorney review them prior to signing. According to Rose, he signed but did not date the representation agreement, promissory note, and deed of trust during Woolard's visit in late 1999.

[5] "Was the transaction transmitted to the client . . . ? Yes. Regardless of which hat Neil Rose wore, he was the client or the sole representative of the client. There is no claim that the documents were in some manner so obtuse or arcane that Mr.

inadequate evidence of compliance with RPC 1.8. We conclude there are material issues of fact as to whether the Firm discharged its duty under former RPC 1.8.

¶20 The courts below mistakenly treated Rose and Valley as one. Washington law defines legal persons to include limited liability companies. RCW 1.16.080(1). A limited liability company like Valley is "an artificial entity or person created under chapter 25.15 RCW." *Dickens v. Alliance Analytical Labs., LLC*, 127 Wn. App. 433, 440, 111 P.3d 889 (2005). Like a corporation, a limited liability company is an independent legal entity to whom a lawyer owes a separate duty of loyalty and is entitled to the notice, disclosure, and opportunity to seek independent counsel required by RPC 1.8.

¶21 Although Rose was the manager of Valley, Rose's sons held 98 percent of the economic interest in the company.[6] Rose and Valley are not one and the same. Rose secured continued representation from the Firm at Valley's expense; Valley's property was offered as collateral on a debt owed by Rose. The Firm continued to have an attorney-client relationship with both Rose and Valley. On this record it would appear the Firm advised Valley to surrender its property in exchange for nothing. The Firm contends it did not know and had no reason to know about Rose's transfer of 98 percent of the economic interest in Valley to his sons. Rose had a potential conflict of interest and breach of fiduciary relationship in transferring Valley's property to secure his personal indebtedness. Even with independent counsel, Rose may have entered into the security agreement, but the Firm's duties under former RPC 1.8 were owed independently to Valley as well.

¶22 We affirm the holdings of the Court of Appeals not inconsistent with this opinion. We remand to the trial court

Rose was not capable of understanding their import." CP at 280 (Order on Mots. for Summ. J.).

[6] The trial court commented that the transfer of economic interest "may not have been in compliance with Sec. 12.2 of the operating agreement," but this argument has not been advanced by the respondents. CP at 277.

for further proceedings consistent with this opinion.[7] Both parties have sought their reasonable attorney fees from the trial court, the Court of Appeals, and now from this court. Neither the trial court nor the Court of Appeals awarded attorney fees and neither do we, without prejudice to future awards of fees.

ALEXANDER, C.J., and MADSEN, BRIDGE, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶23 SANDERS, J. (dissenting) — Valley/50th Avenue, LLC (Valley) sued to enjoin the law firm of Morse & Bratt (Firm) and trustee Randall Stewart from foreclosing on real property owned by Valley. Neil M. Rose, Valley's manager, had signed a representation agreement, a $300,000 promissory note, and a deed of trust to Valley's real property as security for the note after accruing significant outstanding legal fees with the Firm. The majority claims there are genuine issues of material fact concerning whether the Firm violated former RPC 1.8 (1993) by failing to give both Rose and Valley adequate notice. I disagree because there are no material issues left to be determined. Because Rose acted as Valley's manager, Valley was aware of everything of which Rose was aware and Valley was bound by Rose's signature. These agreements were fair, and both Rose and Valley had adequate opportunity to seek independent legal advice.

¶24 Rose has owned and operated several businesses, including Valley. The certificate of formation and the operating agreement were signed by Rose, and Rose was Valley's manager and its sole member. On May 18, 1998, Rose executed a warranty deed drafted by the Firm transferring

---

[7] The Court of Appeals analyzed the conflict between Rose and Valley and concluded RPC 1.7 was not violated. The court further stated that "it is unlikely that the Firm's own security interest in the property materially limited its ability to represent Valley." *Valley/50th Ave., LLC*, 2005 Wash. App. LEXIS 1490, at *8. The opinion does not address whether the Firm's *interest in obtaining* the security interest materially limited its ability to represent Valley when the fee agreement and deed of trust were negotiated and signed. This conflict is distinct from any conflicts that may have resulted *after* the firm obtained its security interest. Though we endorse the holdings of the Court of Appeals not inconsistent with our opinion, only those conflicts that have been examined under RPC 1.7 are affirmed. The Court of Appeals' generic statement that Valley did not prove a violation of RPC 1.7 does not apply to conflicts the court did not examine.

his property to Valley. After the Firm approached Rose about his ever-increasing fees and costs, Rose signed a promissory note promising to pay the Firm $300,000 on demand. He signed it on behalf of himself as an individual and on behalf of Valley, acting as its manager. This note was secured by "a deed of trust on real property, and other security as set forth in an Agreement between promissors and promissee dated September 1, 1999." Clerk's Papers (CP) at 14. Valley specifically agreed to pay any costs, fees, or expenses, including attorney fees, incurred by the Firm in enforcing any obligations secured by the deed. The deed was notarized and signed by "Neil M. Rose, Member," on behalf of Valley and by Rose as an individual on February 3, 2000. CP at 57.

I. Summary Judgment

¶25 Despite the patent fairness of the agreement and negotiations, the majority claims there are outstanding issues of fact concerning the disclosure and the opportunity to seek independent legal counsel. Majority at 746. While some unresolved issues perhaps linger, none are material. To deny summary judgment, there must be a " '*genuine* issue of *material* fact.' " *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000) (emphasis added) (quoting *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000)). When we consider the plain language of former RPC 1.8, the documents on their face, and the protracted negotiation time between when the promissory note was signed and the deed was executed, we can easily conclude the negotiations were fair and both Rose and Valley had ample time to seek independent legal counsel.

II. Rules of Professional Conduct

¶26 The issue is whether the transaction between the Firm and Rose and Valley was fair. Former RPC 1.8 provides the lawyer:

> (a) Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client consents thereto.

¶27 Even if the "exact circumstances" of the disclosure are in doubt, *see* majority at 746, every element of former RPC 1.8(a) is clearly met. The majority claims Rose and Valley are different entities and the Firm owed a separate duty to each under former RPC 1.8.[8] Majority at 747. Regardless, Rose has the power to bind Valley and act as Valley's agent, and Valley was aware of everything of which Rose was àwarè. Therefore, by dealing fairly with Rose, the Firm could not help but deal fairly with Valley.

¶28 Rather than focusing on the facts we don't know, we should focus on those we do. We know the amount of the promissory note corresponded with both the outstanding and future fees and costs due the Firm and the value of the property used as collateral. We know Valley's interests mirrored Rose's. We know the final versions of the documents included the changes made by the Firm based on Rose's requests. We know these terms were transmitted to Rose in writing, and he certainly was able to understand them as a seasoned businessman who had considerable experience in dealing with attorneys. We know Rose corrected the documents before signing them, so he clearly understood the terms of what he was agreeing to. The terms were fair and reasonable, fully disclosed in writing, and

---

[8] Furthermore, Valley argues the deed is unenforceable because Rose signed the deed as "Neil M. Rose, Member," and not as manager. CP at 57. To support its claim, Valley points to the operating agreement, which vests the power to manage the affairs of the company in a manager. But Valley conveniently ignores section 5.1.2 of the operating agreement, which provides, "[u]nless authorized to do so by this Agreement or by the Manager, no Member . . . shall have any power or authority to bind [Valley] in any way, to pledge its credit or to render it liable for any purpose." CP at 31. Therefore, no matter what role Rose was acting in, manager or member, Rose could clearly bind Valley and the deed is enforceable.

understood by Rose and thus Valley. Therefore, former RPC 1.8(a)(1) is satisfied.

¶29 Second, if we assume Rose is correct, and the Firm never said he should have the documents reviewed by an independent attorney,[9] this is immaterial. Former RPC 1.8(a)(2) requires only a "reasonable opportunity to seek the advice of independent counsel." Certainly the Firm need not demand Rose hire an independent counsel or hold his hand in doing so. We know the negotiations occurred over several months,[10] throughout which Rose had access to disinterested lawyers representing him and his various business interests on other matters. What else must we know to conclude Rose and Valley had a "reasonable opportunity to seek the advice of independent counsel"? Rose had ample opportunity to consult with disinterested counsel and the experience to evaluate the utility of doing so. Therefore, former RPC 1.8(a)(2) is satisfied.

¶30 Lastly, both Rose and Valley consented to the transaction, as evidenced by Rose's signature as an individual and on Valley's behalf on both the deed of trust and the promissory note. As manager, Rose's signature also bound Valley. Therefore, former RPC 1.8(a)(3) is satisfied, and the transaction between the Firm and Rose and Valley is fair and enforceable.

¶31 The majority relies on *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 896 P.2d 1281 (1995). But *McMullen* is readily distinguishable from this case. There the attorney acted also as an investment advisor and obtained unsecured loans from an elderly client in declining health. We held the lawyer violated RPC 1.7(b) because he could not reasonably believe the representation would be unaffected by the loan and that the terms of the loans were

---

[9] J.D. Nellor, the Firm's president, testified in his deposition he informed Rose that he was entitled to independent counsel in connection with the representation agreement, the promissory note, and the collateral. Rose contends no one specifically advised him to seek independent legal advice.

[10] The promissory note and representation agreement carry the effective date of September 1, 1999, and the deed of trust was signed by Rose on February 3, 2000.

unreasonable under RPC 1.8(a). Unlike the attorney in *McMullen*, the Firm did not take advantage of an unsophisticated client.

¶32 And even if we apply the *McMullen* standard, the agreement is still fair and enforceable. The Firm was entitled to the fees and costs accrued in the course of representing Rose and his various businesses, and the documents at issue in this case reflect an arrangement between the parties to resolve the outstanding debt. Rose received billing statements on a regular basis and was aware of how much money he owed the Firm. He decided to encumber Valley's property to secure payment on the promissory note to ensure the Firm's continuing representation. There is no information regarding Valley, its property, and the terms of the documents a disinterested attorney could provide Rose that Rose did not already possess through his dealings with the Firm.

¶33 We should affirm the Court of Appeals and hold the Firm did not violate former RPC 1.8 in entering into these agreements. I would also hold Rose had the explicit authority to bind Valley and would grant the Firm's request for attorney and trustee fees.

¶34 I dissent.

C. JOHNSON and OWENS, JJ., concur with SANDERS, J.