[No. 29741-1-III.   Division Three.   June 19, 2012.]

LK Operating, LLC, *Appellant*, v. The Collection Group, LLC, et al., *Respondents*.

*James A. Perkins* (of *Larson Berg & Perkins PLLC*), for appellant.

*Ronald J. Trompeter* (of *Hackett Beecher & Hart*); *Catherine Wright Smith* (of *Smith Goodfriend PS*); and *Steven C. Lacy* (of *Lacy Kane PS*), for respondents.

¶1 SWEENEY, J. — Rules of professional conduct have been used to prohibit lawyers from enforcing agreements with clients that lawyers were a party to. But those same rules have not been applied to support actions for legal malpractice or for equitable relief or damages based on a lawyer's ethical lapses. Here, the court refused to enforce a business agreement between two limited liability companies (LLCs) after concluding that the lawyer representing the parties represented both sides at the same time and therefore violated Rule of Professional Conduct (RPC) 1.7 (prohibiting lawyers from representing clients if there is a conflict of interest). We conclude that the remedy of rescission cannot

be based on a violation of RPC 1.7. We, however, also conclude based on the court's findings that the interests of the lawyer and one of the LLCs were sufficiently aligned to warrant rescission of the agreement based on a violation of RPC 1.8 (prohibiting lawyers from entering into business agreements with their clients). We therefore affirm the superior court's judgment ordering rescission.

## FACTS

BACKGROUND

¶2 Leslie Powers and Keith Therrien practiced law as Powers & Therrien PS in Yakima, Washington. Together they formed LK Operating LLC (LKO) in December 2003. LKO managed irrevocable trusts for the benefit of Mr. Powers' and Mr. Therrien's adult children. Each of the five adult children of Mr. Powers and Mr. Therrien is the sole trustee and the beneficiary of a separate trust. Each trust is the sole shareholder of a corporation and the five corporations are the sole members of LKO. Powers & Therrien Enterprises Inc. manages LKO. Mr. Powers and Mr. Therrien are the officers of that management corporation.

¶3 Brian Fair was a client of Powers & Therrien PS in 2004. That same year, Mr. Fair and his wife formed The Collection Group LLC (TCG) to engage in the business of debt collection. Powers & Therrien PS had no role in the formation of TCG. TCG is managed by Mr. Fair. Mr. Fair asked Mr. Powers whether he or Mr. Therrien would be interested in his new business venture. Mr. Fair proposed an equal investment of funds and ownership. Mr. Fair proposed that he would contribute administrative and management services and that Mr. Powers and Mr. Therrien would contribute legal services. Mr. Fair outlined his joint venture proposal in an October 2004 e-mail regarding the purchase of debt from Unifund, a debt vendor:

Les, Keith,

. . . .

Attached is a sample purchase agreement from Unifund, the company selling the debt, and the attachment for when they sell FUSA debt (aka First USA). I have not had a chance to review it, but I will do so tonight.

Regarding an agreement between myself and you two, this is how I would like to see it:

A. We will split the purchase price and other out of pocket costs, including legal services that your firm cannot provide.

B. You will contribute legal services you can provide (review the purchase agreement contract, legal doc for this JV [joint venture] (if needed), demand letter, ask smart questions, kick the tires, etc.)[.]

C. My contribution will include no charge for finding this debt, negotiations with debtor and debt seller (unless you prefer to do this), and keeping you informed.

Clerk's Papers (CP) at 216.

¶4 Mr. Powers later reviewed the attached Unifund purchase agreement and returned it to Mr. Fair marked up with extensive suggested changes. Mr. Powers did not respond to Mr. Fair's inquiry about an agreement. Mr. Fair continued to negotiate with Unifund; TCG was eventually named as the prospective purchaser of the debt. Mr. Fair sent an e-mail to Mr. Powers in January 2005 asking whether he was still interested in the deal with Unifund. Mr. Powers did not respond. Mr. Fair then caused TCG to invest in the Unifund debt portfolio with $7,969.23 of its own money. Mr. Fair began work to collect the debt that TCG had purchased.

¶5 Mr. Fair exchanged e-mails with Powers & Therrien PS that discussed the legal services required to collect the debt. The law firm drafted legal documents for TCG and TCG made progress collecting the accounts in the Unifund portfolio. In early February 2005, Mr. Powers apparently indicated in a telephone conversation with Mr. Fair that LKO, the company owned by the adult children, was inter-

ested in making the proposed investment. Mr. Fair sent a fax to Mr. Powers' legal assistant, asking her to arrange for a check for $3,984.61 (one-half the cost of the Unifund portfolio) made out to "The Collection Group, LLC." CP at 1153. Mr. Fair again sent the fax to the firm's bookkeeper several days later after he did not receive the funds.

¶6 TCG received a check in the amount requested on February 21, 2005. The check was signed by Michelle Briggs, whom Mr. Fair knew to be an employee of Powers & Therrien PS. The check was a "counter check" with the name "LK Operating LLC" handwritten in the upper left-hand corner. CP at 197, 441. Mr. Fair did not know the identity of LKO but assumed it was an account owned by Les and Keith of Powers & Therrien PS. Mr. Fair faxed an accounting to Powers & Therrien PS that stated: "Les, this gives you guys 1/2 ownership in the company. You can formalize however you wish." CP at 311. Neither Mr. Powers nor Mr. Therrien formalized any agreement.

¶7 Mr. Fair continued to expand the business and when an opportunity to purchase additional debt portfolios arose, he contacted Powers and Therrien PS for additional funds. They responded and sent three additional checks: one on March 3, 2005, for $13,015.39; one on December 23, 2005, for $10,000.00; and one on September 11, 2006, for $25,000.00. Each check was a "LK Operating LLC" counter check. Mr. Powers and Mr. Therrien still had not proposed any formal agreement to spell out the relationship among the parties.

¶8 Mr. Fair asked Mr. Powers to draft an operating agreement for a new entity, OPM I LLC, in early 2007. OPM was a limited liability company formed by TCG and Mr. Fair to collect delinquent debt in states other than Washington. TCG was a member of OPM, and TCG and Mr. Fair were its managers. The OPM operating agreement drafted by Mr. Powers included a waiver of "legal conflict": "Members of Counsel's family have an interest in the Manager and through it the Company [OPM]." CP at 1478-79. Mr. Fair signed the OPM operating agreement personally and as TCG's manager.

¶9 Mr. Fair again requested that Mr. Powers and Mr. Therrien formalize their ownership interest in TCG in April 2007. This time Mr. Fair proposed that Mr. Powers and Mr. Therrien would own a 38 percent interest, that Mr. Fair's mother would own a 7 percent interest, and that he and his wife would own a 55 percent interest. The percentages were based on both the financial and service related contributions of the parties. Mr. Fair estimated that the value of TCG had grown to approximately $1.5 million. Mr. Powers and Mr. Therrien rejected the proposal and insisted that they were entitled to a 50 percent ownership interest in TCG.

PROCEDURAL HISTORY

¶10 Mr. Powers and Mr. Therrien caused LKO to sue TCG and Mr. Fair for a judicial declaration of the ownership rights of the parties, for breach of fiduciary duty, and for breach of contract. The Fairs responded by suing Mr. Powers and Mr. Therrien personally for legal malpractice and breach of the Consumer Protection Act, chapter 19.86 RCW. Both matters were consolidated. TCG and the Fairs moved for partial summary judgment against LKO on the ground that RPC 1.8 prohibits business dealings between an attorney and his client unless the client gives informed consent. LKO also moved for summary judgment against the Fairs on the ground that Mr. Fair was not a client of Powers & Therrien PS at the time of the disputed transaction, and neither Mr. Powers, Mr. Therrien, nor Powers & Therrien PS had any ownership or financial interest in LKO.

¶11 The court ruled in a memorandum decision that Mr. Fair personally was at all times a client of Powers & Therrien PS. The court ruled that any attempted purchase of an interest in TCG by Mr. Powers and Mr. Therrien personally or through Powers & Therrien PS would be against public policy and void because it violated RPC 1.8. The court, however, also concluded that a question of fact remained about whom Mr. Fair actually entered into the agreement with, Powers & Therrien PS or LKO.

¶12 The court went on to conclude, sua sponte, that Mr. Powers and Mr. Therrien had a conflict of interest under RPC 1.7 (concurrent conflict of interest). This was because Powers & Therrien PS represented LKO, and LKO was a potential purchaser of an ownership interest in TCG, and neither entity consented to the representation. The court denied LKO's motion for summary judgment, partially granted TCG's motion for summary judgment, and requested additional briefing on whether rescission was an appropriate remedy for a violation of RPC 1.7.

¶13 LKO and Mr. Powers and Mr. Therrien each moved to reconsider. The court granted LKO's motion in part by ruling that a question of fact remained as to whether Mr. Therrien had violated RPC 1.7 but denied the balance of the motions. Mr. Fair later stipulated at a discovery hearing that the contract at issue was not a sale of personal equity, but was a direct transaction with TCG. He stipulated that he acted as an agent for TCG, and not personally. LKO then again requested that the court reverse the previous ruling on the ground that the stipulations effectively meant the contract at issue was solely between LKO and TCG, not with Mr. Fair personally, and therefore there could not be the basis for a RPC 1.8 violation by Powers & Therrien PS. LKO also again argued that a question of fact remained as to whether there was an attorney-client relationship between TCG and Powers & Therrien PS at the time they contracted with LKO. The court rejected those arguments in a second memorandum decision:

> Now, based upon the parties' stipulation, the issue has become whether the violation of RPC 1.7 by Les Powers voids any agreement between LK Operating, LLC and The Collection Group, LLC? Mr. Powers and Mr. Therrien controlled the operation of LK Operating, LLC through their ownership of Powers & Therrien Enterprises, Inc., the manager of LK Operating, LLC. As an owner of Powers & Therrien Enterprises, Inc., Mr. Powers had a fiduciary duty to LK Operating, LLC at all times material hereto.

The creation of LK Operating, LLC by Les Powers and Keith Therrien assisted their estate plans. The success of LK Operating, LLC, benefitted their children. Les Powers and Keith Therrien had a personal interest in the success of LK Operating, LLC.

There is clearly a question of fact as to when Powers & Therrien, P.S. began to represent The Collection Group, LLC. However, at the time their client, the owner of a new collection business, first approached them about joining him as partners in this business, they had a duty *inter alia* to disclose their personal interest (as parents), legal duties (as manager) and professional duties (as attorneys) that they had to LK Operating, LLC pursuant to RPC 1.7.

They also owed professional duties to Brian Fair, their existing client, the individual who represented to them that he was the sole owner of the collection business. They owed these professional duties to Brian Fair regardless of the fact that he approached them as an agent of The Collection Group, LLC because he was still their client and he owned The Collection Group, LLC. His ownership interest in The Collection Group, LLC would be affected by the addition of any investors. Consequently, any representation of LK Operating, LLC by Mr. Powers would be adverse to the interests of Brian Fair, even if the transaction was going to be between LK Operating, LLC and The Collection Group, LLC, Mr. Fair's company.

It is not necessary to determine when Mr. Powers began representing The Collection Group, LLC in order to conclude RPC 1.7 was violated by Mr. Powers as a matter of law. He represented LK Operating, LLC. He had a significant personal and financial interest in LK Operating, LLC as a parent, as an owner of its manager, Powers & Therrien Enterprises, Inc. and as the attorney for LK Operating, LLC. He represented Brian Fair, who had significant personal interest in any transaction between LK Operating, LLC and The Collection Group, LLC.

As a result, Mr. Powers had a concurrent conflict of interest as a matter of law. Because he failed to disclose his relationships to LK Operating, LLC to Brian Fair and he failed to obtain written informed consent from Brian Fair and LK Operating, LLC, he violated RPC 1.7 as a matter of law.

CP at 2371-72. The court acknowledged the absence of controlling authority in Washington on whether a violation of RPC 1.7 made the transaction voidable but cited the New Mexico case of *C.B.&T. Co. v. Hefner*[1] in support of its ultimate conclusion that it did. The trial court's decision on the motion for reconsideration stated that it was "no longer necessary to rule on whether RPC 1.8 was violated." CP at 2373.

¶14 The court bifurcated the malpractice action from the contract action in preparation for trial limited to the appropriate amount of damages that should follow from the rescission. Following trial, the court entered judgment in favor of LKO for the principal amount of all sums which LKO invested with TCG plus interest: $78,431.61. The court entered findings of fact and conclusions of law. LKO appeals and TCG and Mr. Fair cross appeal. In June 2011, the court summarily dismissed Mr. Fair's malpractice action on the basis that there were no cognizable damages from Mr. Powers' violation of RPC 1.7.

## DISCUSSION

### Violation of RPC 1.7 and Remedy of Rescission

¶15 LKO contends that the court's conclusion that Mr. Powers represented either LKO or Mr. Fair in this investment agreement is wrong. LKO admits that Mr. Fair personally was a client of Powers & Therrien PS but contends that when Mr. Fair presented the investment proposal to Mr. Powers he was acting as the managing agent for TCG. LKO contends that Mr. Fair never acted in his personal capacity. LKO argues that it, not Mr. Powers, invested in TCG. LKO argues that is precisely why the trial court could not, and did not, rule that Mr. Powers violated any RPC 1.7 obligation owed to TCG, only to Mr. Fair. But, again, LKO contends that because Mr. Fair was not personally a party to the investment agreement and also did not ask for personal representation, there can be no finding

---

[1] 98 N.M. 594, 651 P.2d 1029 (1982).

that Mr. Powers violated any RPC 1.7 obligation owed to Mr. Fair.

¶16 LKO contends that the court's use of RPC 1.7 to impose civil legal obligations was wrong because the RPCs are ethical rules, not intended to be used to impose civil liability. LKO argues that RPC 1.7 was the only basis for approving rescission here since the court refused to find fraud or misrepresentation, breach of fiduciary duties, or breach of contract. LKO contends it is a nonlawyer and therefore owed no ethical duties and should not have been subject to this civil sanction based on violation of a RPC.

¶17 TCG responds that Powers & Therrien PS represented LKO at the time of the investment proposal and worked on LKO's behalf to make it a member of TCG. TCG contends that Powers & Therrien PS also represented Mr. Fair. TCG argues that it is irrelevant whether a lawyer's two clients are both involved in the same transaction for purposes of a RPC 1.7 violation. RPC 1.7 bars a lawyer from representing a client in a negotiation with someone who is a client of the lawyer in an unrelated matter. TCG argues that the investment opportunity was offered directly to Mr. Powers and Mr. Therrien, and that Mr. Fair did not even know who LKO was. Indeed, Mr. Fair assumed that because the initials were "LK," it was Les's and Keith's company. So, TCG urges that the court was correct in holding that Powers & Therrien PS simply could not ethically represent LKO in a negotiation when Mr. Fair was still a client. And TCG says that the court's remedy, rescission, is proper. *See C.B.&T. Co.*, 98 N.M. 594.

¶18 We review a trial court's order granting summary judgment de novo and engage in the same inquiry as the trial court. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002) (quoting *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000)). Summary judgment is appropriate when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR

56(c). We consider facts and reasonable inferences in the light most favorable to the nonmoving party. *Hubbard,* 146 Wn.2d at 707. And we review de novo whether an attorney's conduct violates the Washington Rules of Professional Conduct. *See Gustafson v. City of Seattle,* 87 Wn. App. 298, 302, 941 P.2d 701 (1997).

### Conflict of Interest (RPC 1.7)

¶19 A lawyer shall not represent a client if the representation of that client may be directly adverse to another client or materially limited by the lawyer's responsibilities to another client, third person, or by the lawyer's own interests unless the lawyer reasonably believes that the representation will not be adversely affected, and the client consents in writing after consultation and a full disclosure of material facts. RPC 1.7(a), (b). Direct conflicts can even arise in transactional matters involving the representation of multiple clients in unrelated matters. RPC 1.7 cmt. 7 ("For example, if a lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter, the lawyer could not undertake the representation without the informed consent of each client.").

¶20 LKO does not dispute that Mr. Powers represented Mr. Fair prior to the formation of TCG in an unrelated matter. And this record supports that this attorney-client relationship had not ended at the time of the agreement that is the center of the dispute. LKO also does not dispute that Mr. Powers represented LKO, his children's company. Mr. Powers managed LKO through a separate corporation. Mr. Fair solicited investments from Mr. Powers and Mr. Therrien, not LKO. The initial proposal is set out in an e-mail with an attached sample purchase agreement from a debt vendor. Mr. Powers marked up that sample agreement with suggestions and returned it to Mr. Fair. Mr. Powers performed those legal services for Mr. Fair, not LKO. Mr.

Powers later created legal documents for Mr. Fair and his new company, TCG. We are led then to conclude, as the trial judge did, that Mr. Powers simultaneously represented both Mr. Fair and LKO.

¶21 LKO contends, nonetheless, that such simultaneous representation still does not give rise to an RPC 1.7 violation because the representations occurred in unrelated matters and not the transaction at issue. We disagree. There is a conflict of interest even when a lawyer represents a client in another unrelated matter and then represents a second client in a business transaction with the current client. RPC 1.7 cmt. 7. And that is what we have here.

¶22 Mr. Powers represented both Mr. Fair and LKO in separate, unrelated matters and then represented LKO in the business transaction with Mr. Fair by relaying the investment proposal and forwarding the funds. Mr. Powers had a duty to disclose his personal interest in LKO, his legal duties as manager of LKO, and his professional duties as an attorney for LKO. The representation of Mr. Fair was directly adverse to the representation of LKO in the transaction and there is no evidence that either client gave informed consent in writing. Mr. Powers violated RPC 1.7.

RPC as Basis for Rescission

¶23 LKO next contends that even if Mr. Powers violated RPC 1.7, LKO's agreement with TCG should not be subject to rescission.

¶24 The Supreme Court adopted the RPCs pursuant to its power to regulate the practice of law in Washington. *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992). The RPCs are not intended to serve as a basis for civil liability, nor do they establish the appropriate standard of care in a civil action. *Id.* at 259-61. The RPCs simply establish the " 'minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.' " *Id.* at 262 (quoting former RPC Preliminary Statement (1985)). But agreements that violate RPCs or, at least,

RPC 1.8, have been held to be contrary to public policy and the courts of this state have refused to enforce agreements based on a violation of RPC 1.8. *In re Corp. Dissolution of Ocean Shores Park, Inc.*, 132 Wn. App. 903, 910, 134 P.3d 1188 (2006); *Danzig v. Danzig*, 79 Wn. App. 612, 616-17, 904 P.2d 312 (1995); *Marshall v. Higginson*, 62 Wn. App. 212, 217-18, 813 P.2d 1275 (1991). Here LKO sued for a judicial declaration of its understanding of the agreement with Mr. Fair and TCG.

¶25 In *Hizey*, clients sued their attorney and alleged legal malpractice based on the lawyer's conflict of interest. *Hizey*, 119 Wn.2d at 256-57. The trial judge refused to let an expert testify on rules of professional conduct and refused to instruct the jury on those rules. *Id.* at 257-58. The Supreme Court affirmed. The court held that a violation of ethics rules must be pursued through a disciplinary proceeding. *Id.* at 259. And the court held that such violations may not serve as the basis for a private cause of action. *Id.* at 259, 261. The court reasoned that a claim for legal malpractice focuses on the duty of care owed to the client, which is established by the relationship and not by the RPCs. *Id.* at 260-62.

¶26 The *Hizey* decision, however, addressed application of the RPCs only in the legal malpractice setting. The court did not answer whether the court would also separate the ethics and potential civil liability in other suits, such as fee disgorgement, breach of contract, or disqualification motions. Indeed, the court noted that other courts had "relied on the CPR [Code of Professional Responsibility] and RPC for reasons other than to find malpractice liability and our holding today does not alter or affect such use." *Hizey*, 119 Wn.2d at 264 (citing *Singleton v. Frost*, 108 Wn.2d 723, 742 P.2d 1224 (1987) (relying on disciplinary rule to determine reasonableness of attorney fees); *Eriks v. Denver*, 118 Wn.2d 451, 824 P.2d 1207 (1992) (holding violation of CPR is a question of law, not fact); *Walsh v. Brousseau*, 62 Wn. App. 739, 815 P.2d 828 (1991) (holding contract for sale of law practice, which included duty on part of selling attorney to

refer clients as consideration for the sale, violated RPC)). At least one legal scholar has suggested that the court did not need to be so cautious, as many of the other cases are distinguishable. Stephen E. Kalish, *How to Encourage Lawyers To Be Ethical: Do Not Use the Ethics Codes as a Basis for Regular Law Decisions*, 13 Geo. J. Legal Ethics 649, 672 (2000) ("None of the cases that [the court] cites suggests that a judge in his instructions or an expert in his opinion may explicitly refer to ethics law.").

¶27 The courts of this state have applied RPC 1.8 (restricting business transactions with a client) to refuse to enforce fee agreements with attorneys as being against public policy. *See Valley/50th Ave., LLC v. Stewart*, 159 Wn.2d 736, 743, 153 P.3d 186 (2007); *Ocean Shores Park*, 132 Wn. App. 903; *Holmes v. Loveless*, 122 Wn. App. 470, 475, 94 P.3d 338 (2004); *Cotton v. Kronenberg*, 111 Wn. App. 258, 270-71, 44 P.3d 878 (2002). The application of the RPC and result in these cases was not, however, categorical. The lawyer could show that the contract was fair and reasonable, free from undue influence, and made after a fair and full disclosure of the facts before the court would hold any agreement void or voidable. *Valley/50th Ave.*, 159 Wn.2d at 743-44.

¶28 The issue in *Valley/50th Avenue* was the enforceability of a promissory note and fee agreement a client executed in favor of a law firm to secure a fee and cost bill owed by another client. 159 Wn.2d at 740-41. The court concluded that "the note and deed of trust was more like a business transaction than a fee agreement, [so] the issue then is whether the [law firm] satisfied the minimum notice, disclosure, and reasonable opportunity to seek the advice of independent counsel." *Id.* at 745. The court ultimately concluded that there were material issues of fact as to whether the law firm discharged its duty under RPC 1.8 and remanded for further proceedings. *Id.* at 747.

¶29 Here, the court concluded that Mr. Powers had violated RPC 1.7 and, based on the New Mexico case, *C.B.&T. Co.*, it held that the agreement between LKO and TCG was voidable.

¶30 We conclude, however, that RPC 1.7 cannot provide the basis for rescission. RPC 1.8, which has provided the legal basis for rescission, is different in its wording and its effect from RPC 1.7. A lawyer violates RPC 1.8 when the lawyer enters into a business transaction with his or her client without the minimum notice and disclosure, and without giving the client the opportunity to seek the advice of independent counsel. We will then generally refuse efforts by the lawyer to enforce those agreements. *Valley/50th Ave.*, 159 Wn.2d at 743; *Ocean Shores Park*, 132 Wn. App. at 912-13.

¶31 What we have with RPC 1.7 is a rule to regulate the attorney-client relationship and ensure that an attorney's representation is not materially limited by conflicting interests. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 336, 157 P.3d 859 (2007) ("The rule assumes that multiple representation will necessarily require consultation and consent in writing, reasonably so since the rule imposes these requirements anytime there is *potential* conflict."). The differences are important.

¶32 The problem with applying RPC 1.7 here is that the remedy, rescission, could easily fall on an innocent client. And it is not the client who should pay for the sins of its lawyer. Even if the lawyer breached his or her fiduciary duties, it is the lawyer who should suffer the consequences, not the client. It is not the client(s) who did anything wrong; it is the lawyer by representing clients on both sides. The appropriate remedy is to file a disciplinary action with the Washington State Bar Association.

¶33 In sum, we agree Mr. Powers violated RPC 1.7. But that violation cannot be grounds to rescind any investment agreement between LKO and TCG.

## CROSS APPEAL

¶34 TCG cross appeals and urges that we affirm the court's decision to rescind the contract based on a violation of RPC 1.8 since we may affirm on any ground argued at

the trial court. TCG argues essentially that there was sufficient evidence of a de facto contract between Mr. Powers and TCG and Mr. Fair, a contract sufficient to invoke the strictures of RPC 1.8. Mr. Powers again responds that the agreement was between LKO and TCG, not LKO and Mr. Powers, and so he did not enter into this business relationship with a client. LKO responds that it accepted the investment offer and it provided the investment funds. Mr. Powers also urges that the court's conclusions show that there was not the commonality of interest between Powers & Therrien PS and LKO that TCG and Mr. Fair suggest. CP at 2307 (Conclusion of Law F) ("LKO is not the 'alter ego' of Powers or Therrien, nor is there a basis to pierce the corporate veil of LKO's independent existence.").

BUSINESS TRANSACTION WITH CLIENT (RPC 1.8)

¶35 TCG became a client of Powers & Therrien PS in February 2005, when the firm drafted legal pleadings for TCG to use to collect debt. Accordingly, TCG argues that the resulting agreement between Mr. Powers and TCG is voidable as a violation of public policy pursuant to RPC 1.8.

¶36 RPC 1.8 sets out rigorous requirements a lawyer must meet before he enters into a business transaction with a current client or knowingly acquires an ownership, or possessory, security, or other pecuniary interest adverse to a client. " '[A]n attorney-client transaction is prima facie fraudulent.' " *Valley/50th Ave.*, 159 Wn.2d at 745 (quoting *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 704, 826 P.2d 186 (1992)). The burden is on the lawyer who has entered into a business transaction with a client or acquires an interest adverse to a client to show that there was no undue influence. The lawyer must show that he or she gave the client the same information or advice as a disinterested lawyer would have given. And the lawyer must show that the client would have received no greater benefit had he or she dealt with a stranger. *In re Disciplin-*

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*ary Proceeding Against Haley*, 157 Wn.2d 398, 406, 138 P.3d 1044 (2006) (quoting *In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 164, 896 P.2d 1281 (1995)).

¶37 It is undisputed that Powers & Therrien PS represented Mr. Fair, the manager of TCG, in 2004 on a separate matter. After Mr. Fair formed TCG in 2004, Powers & Therrien PS drafted legal documents for TCG to facilitate collecting the debt TCG had purchased. The documents included promissory notes, mutual releases, and a summons and complaint. Powers & Therrien PS then represented TCG and performed legal services on TCG's behalf.

¶38 The matter proceeded to a bench trial after the court ordered rescission of the contract, and the court entered findings and conclusions following that bench trial that are helpful here.[2]

### FINDINGS OF FACT

13. On or about October 27, 2004, an email was sent from Brian Fair to the Powers & Therrien, P.S. email account addressed to "Les, Keith" setting forth Brian Fair's proposal.

---

[2] In motions for reconsideration, LK Operating and Powers and Therrien argue that in the evaluation of RPC 1.8 as a basis for decision, we should not review these findings and conclusions but should limit ourselves to the summary judgment record, viewed in the light most favorable to them. While TCG always relied on the trial court's findings following trial as the basis for its cross appeal, the appellant and intervenors raise this objection for the first time in their motions for reconsideration.

The trial court was not required to reach the RPC 1.8 issue in ruling on summary judgment but it did not dismiss TCG's and Mr. Fair's claim based on that ethical rule. (The statement to the contrary in our original opinion was mistaken.) And while the trial focused on LK Operating's right to recover rescissory damages, TCG persisted in contending that both ethical rules had been violated, *see, e.g.*, CP at 2121, just as LK Operating continued to contend that TCG had not established an ethical breach by the lawyers. *See, e.g.*, RP at 384 ("[T]hey're trying to, from the other side, turn an innocent party's investment into, You don't get any money back, because we think . . . some other third party . . . did something wrong."). In any event, a judge may reverse or modify a summary judgment ruling at any time prior to the entry of final judgment. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 37, 864 P.2d 921 (1993). The Court's findings following trial are the appropriate focus of our review. *See Johnson v. Rothstein*, 52 Wn. App. 303, 306, 759 P.2d 471 (1988) (rulings made at the time summary judgment was denied affecting the final judgment " 'can be reviewed at that time in light of the full record' " (quoting *Evans v. Jensen*, 103 Idaho 937, 942, 655 P.2d 454 (Ct. App. 1982))).

. . . .

19. The proposed terms were accepted by Les Powers when the money was sent to TCG.

. . . .

30. Professional legal services sought by TCG as part of the Proposal were provided by Powers & Therrien, P.S.

. . . .

41. Powers caused the issuance of the LKO check to TCG in February 2005.

## CONCLUSIONS OF LAW

F. LKO is not the "alter ego" of Powers or Therrien, nor is there a basis to pierce the corporate veil of LKO's independent existence.

. . . .

H. Les Powers was both a principal in the law firm of Powers & Therrien, P.S., and an officer of LKO's manager, PTE.

. . . .

J. The terms of the Proposal by Fair as agent for TCG were accepted by Les Powers.

K. Ultimately, Les Powers, pursuant to his agreement with Brian Fair, as agent for TCG, chose to enter into the Investment Agreement with TCG.

L. Les Powers made sure at all times that performance of the terms of the Proposal, including investing $52,000 from LKO to TCG, and Powers & Therrien, P.S. providing legal services to TCG was accomplished. The court makes no ruling regarding whether LKO was involved in the unauthorized practice of law.

M. Les Powers accepted the business offer by having LKO provide the sum of $17,000 to TCG, which occurred beginning February 21, 2005.

CP at 2303-08.

¶39 Mr. Fair and TCG were clients of Powers & Therrien PS; the attorneys provided legal services for them. And, the October 2004 e-mail from Mr. Fair was an offer to Mr.

Powers and Mr. Therrien to invest in TCG and provide legal services as part of the deal. Mr. Powers and Mr. Therrien were the only persons who could accept the specific investment offer from Mr. Fair because the offer was a bilateral offer to them. *Dorsey v. Strand*, 21 Wn.2d 217, 224, 150 P.2d 702 (1944) ("[W]hen an offer is made, it can be accepted only by the offeree."). The trial court concluded that LKO is not the "alter ego" of Mr. Powers or Mr. Therrien. But Mr. Powers is both a principal in the law firm of Powers & Therrien PS, and a controlling officer of LKO's manager, Powers & Therrien Enterprises Inc. There is no finding that Mr. Powers acted in any other capacity than a lawyer when he accepted the deal and forwarded the funds. In fact, TCG contends that the court specifically struck such agency language from the findings because it was unsupported. Br. of Resp'ts to Br. of Intervenors at 8-9.

¶40 Mr. Powers and Mr. Therrien organized LKO as part of their estate planning for their adult children. It is controlled by five corporate members headed by the spouses of Mr. Powers and Mr. Therrien, and the shareholders of those corporate members are trusts for their children. Mr. Powers, then, had a significant personal and financial interest in LKO as a parent, as an owner/officer of its manager, and as its attorney. The court concluded that he alone chose to enter into the business deal with Mr. Fair. CP at 2308 (Conclusions of Law J, K, L). Those conclusions are supported by the fact that Mr. Powers personally received the offer and he forwarded the funds from his law office. Mr. Powers may not have been the "alter ego" of LKO but that is not dispositive. He accepted the offer to invest in TCG in his capacity as an attorney and then caused LKO to contribute the funds. He had a substantial interest in the success of LKO—it was his family.

¶41 Mr. Powers and Mr. Therrien contend that a business transaction between a lawyer and a client must confer some benefit to the attorney or client. *See Valley/50th Ave.*, 159 Wn.2d at 747; *In re Disciplinary Proceeding Against*

*Miller*, 149 Wn.2d 262, 66 P.3d 1069 (2003); *In re Disciplinary Proceeding Against Holcomb*, 162 Wn.2d 563, 173 P.3d 898 (2007); *Holmes*, 122 Wn. App. at 475. Neither the cases cited nor RPC 1.8 seems to require that an actual benefit be conferred. In *Holmes*, an attorney's ownership stake in a client's joint venture actually declined and the court still found that the accompanying fee agreement fell within the scope of the business transaction rule. 122 Wn. App. at 475. Regardless, there is evidence in this record that Mr. Powers stood to benefit from LKO's success in many ways. Again, it was his family.

¶42 We are led to conclude that Mr. Powers entered into a business transaction with a client (TCG) in violation of RPC 1.8. *See Valley/50th Ave.*, 159 Wn.2d at 745 (" '[A]n attorney-client transaction is prima facie fraudulent.' " (quoting *Johnson*, 118 Wn.2d at 704)). The fact that the trial court ruled LKO was entitled to the return of the $52,000 investment does not necessarily mean it was the contracting party. Mr. Powers entered into the transaction and then used funds from his children's company, a company he also controlled. We then conclude that RPC 1.8 provides an alternative basis to rescind the agreement because it was against public policy. *Ocean Shores Park*, 132 Wn. App. at 912-13 (business deal between attorney and client void as against public policy).

¶43 We affirm the superior court's judgment ordering rescission.

SIDDOWAY, A.C.J., and KULIK, J., concur.

After modification, further reconsideration denied October 11, 2012.

Review granted at 176 Wn.2d 1027 (2013).