

This opinion was filed for record
at 8:00 am on July 31, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

LK OPERATING, LLC, a Washington limited liability company, )
)
)
Petitioner, )
)
v. )
)
THE COLLECTION GROUP, LLC, a Washington limited liability company; and BRIAN FAIR and SHIRLEY FAIR, husband and wife, and their marital community composed thereof, )
)
)
)
)
)
)
Respondents, )
)
LESLIE ALAN POWERS and PATRICIA POWERS, husband and wife, and KEITH THERRIEN and MARSHA THERRIEN, husband and wife, )
)
)
)
)
)
Petitioners/Intervenors. )
)

NO. 88132-4

EN BANC

Filed _____ JUL 3 1 2014 _____

FAIRHURST, J.—In this case and its companion, *LK Operating, LLC v. Collection Grp., LLC*, No. 88846-9 (Wash. July 31, 2014), we consider issues arising from a joint venture proposal regarding a debt collection business. The debt collection business operated according to the functional terms of the joint venture proposal from approximately winter 2005 through summer 2007, at which point the

disagreements underlying the present litigation surfaced. This opinion addresses whether the proceedings below complied with due process requirements; whether, as a matter of law, the joint venture proposal was entered by an attorney in violation of one or both of former RPCs 1.7 (1995) and 1.8(a) (2000); and, if so, whether the remedy imposed by the trial court and affirmed on appeal is appropriate. We affirm.

The proceedings below satisfied the requirements of procedural due process because the parties received sufficient notice and a meaningful opportunity to be heard regarding the issues presented for judicial determination. We hold, though on different reasoning from that used by the Court of Appeals, that the undisputed facts establish as a matter of law that the joint venture proposal contemplated a business transaction subject to, agreed to, and entered into in violation of former RPC 1.8(a). We affirm that the former RPC 1.8(a) violation renders the terms of the business transaction unenforceable under the circumstances presented and the remedy imposed was appropriate. We further affirm that the business transaction was entered in violation of former RPC 1.7. We need not, and decline to, determine whether the former RPC 1.7 violation would also justify the remedy imposed.

## I. FACTUAL AND PROCEDURAL HISTORY

At all relevant times, Leslie Powers (Mr. Powers) and Keith Therrien (Mr. Therrien)[1] practiced law as Powers & Therrien, PS (Law Firm). In December 2003, Mr. Powers and Mr. Therrien formed LK Operating (LKO), a limited liability company (LLC). LKO has five members, each of which is a corporation. Each corporation has a single shareholder, and each shareholder is a trust. One of Mr. Powers' or Mr. Therrien's adult children is named as the trustee and sole beneficiary of each of those five trusts. LKO is managed by Powers & Therrien Enterprises Inc. (P&T Enterprises). Mr. Powers and Mr. Therrien are the officers of P&T Enterprises. The Law Firm, LKO, each of LKO's member corporations, and P&T Enterprises all apparently used the same mailing address during the relevant time frame.

In early 2004, Brian Fair retained the Law Firm in connection with Fair's formation of a Nevada-based LLC, which is not implicated here. Fair, who practiced as a certified public accountant from 1995 through 2007, had prior familiarity with the Law Firm through common clients. Several months later, Fair and his wife, without the assistance of any attorney, formed The Collection Group LLC (TCG) to

---

[1]Where actions are alleged to have been taken, or arguments are raised, by only Leslie Powers or Keith Therrien, the discussion will identify the relevant attorney using the title "Mr." and the pronoun "he." Where both attorneys are implicated, their joint assertions and arguments will be attributed to "Powers," without any title, using the pronoun "it." This terminology is used solely for clarity, and we intend no disrespect in using titles when referring to Mr. Powers and Mr. Therrien but not other individuals.

3

run a debt collection business. Fair acted as manager of TCG, and, at the time of its formation, TCG had only two members—Fair and his wife.

In early fall 2004, Fair, in his capacity as TCG's agent, asked Mr. Powers if he, Mr. Therrien, and/or the Law Firm[2] would be interested in investing in TCG and operating it as a joint venture. Fair proposed each party to the joint venture would contribute 50 percent of the costs, Fair would provide administrative and management services at no itemized or hourly cost, the Law Firm and/or Powers would provide legal services at no itemized or hourly cost, Fair would own 50 percent of TCG, and the Law Firm and/or Powers would own the other 50 percent of TCG. Powers claims it explicitly rejected this offer but suggested to Fair that LKO might be interested in investing. Fair claims Mr. Powers expressed interest in the idea but did not give an explicit response and did not mention LKO as a prospective investor. This factual dispute is not material to our holding and does not require resolution.

In late October 2004, Fair e-mailed Powers at its Law Firm e-mail address. Fair again set out his joint venture proposal and attached a proposed purchase and sale agreement for a debt portfolio from a company called Unifund (which is not otherwise implicated here) to TCG. In this e-mail, Fair described the proposed joint

---

[2]It is unnecessary for purposes of this decision to determine whether Fair's proposal was directed to all three of these parties or to some subset of them, and we do not do so.

venture as "between myself and you two." Clerk's Papers (CP) at 22. Mr. Powers made extensive notations, edits, and suggestions on the proposed purchase and sale agreement and e-mailed this annotated version back to Fair in December 2004. However, Mr. Powers' e-mail did not respond directly regarding Fair's joint venture proposal. Mr. Powers asserts his annotations to the Unifund purchase and sale agreement were not for TCG's benefit; rather, they were "designed to make the investment safer and acceptable to our children's company [LKO]" and were a part of the "due diligence" required of Mr. Powers "as an officer of the manager and for the exclusive benefit of our children's company." CP at 1411.

Apparently interpreting Mr. Powers' e-mail response as an acceptance of the joint venture proposal, Fair then contacted the Law Firm, through both its legal assistant and its bookkeeper, to request half of the funds needed to purchase the Unifund debt portfolio. While awaiting the funds, TCG purchased the Unifund portfolio with its own money. In February 2005, Fair ultimately received a check for half the purchase price of the Unifund debt portfolio. The check was a "counter check,"[3] and so there was no preprinted information on the check regarding the account holder. Rather, the check included a handwritten notation at the upper left-

---

[3] A "counter check" is a check issued by and redeemable at a bank. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 519 (2002).

hand corner reading, "LK Operating, LLC." CP at 833. The check was signed by Michele Briggs, a Law Firm employee.

Fair asserts he had no idea what "LK Operating, LLC" was, but he recognized the check as precisely the amount he had requested on behalf of TCG for the Unifund purchase and assumed the check came from Powers or the Law Firm, knowing Mr. Powers and Mr. Therrien have the first initials "L" and "K," respectively. Powers asserts Fair knew all along the money was coming from LKO and knew LKO was an entirely separate entity from the Law Firm. This factual dispute is not material to our decision on review and does not require resolution.

Shortly after the first check was sent, Fair e-mailed Powers to request further funds on behalf of TCG and stated, "Les[lie Powers], this gives you guys $\frac{1}{2}$ ownership in the company. You can formalize however you wish." CP at 311. No written agreement or other formalization of the joint venture was proposed or entered by Powers or Fair. For a little over two years, Fair continued to engage in debt collection through TCG and requested and received multiple checks for one-half the purchase price of other debt portfolios; each such check was a counter check with "LK Operating, LLC" handwritten or typed in the upper-left hand corner, and each check was signed by Michele Briggs. The Law Firm, primarily through Mr. Powers and a legal assistant, Diane Sires, provided legal services to TCG as requested. The Law Firm did not bill TCG for its legal services.

In April 2007, Fair proposed to Powers a formalized joint venture agreement, which would modify TCG's ownership structure from that originally proposed. Fair proposed his percentage of ownership would be 55 percent, his mother would have a 7 percent interest, and Powers would have a 38 percent interest. Fair asserted this apportionment of ownership interest was based on the differing amounts of money and work each party had contributed to TCG over the years. Powers objected, asserting the original joint venture agreement provided for 50/50 ownership.

On June 29, 2007, Fair gave Powers notice, through their respective attorneys, that TCG would no longer purchase new debt portfolios and intended to contract with another entity for its debt collection work. P&T Enterprises, through its attorney, responded by stating Mr. Powers, Mr. Therrien, and the Law Firm did not have or claim any interest in TCG, and LKO was the only other party to the business transaction contemplated by TCG's joint venture proposal. LKO alleges Fair then began transferring TCG's accounts to another debt collection LLC, which was owned entirely by Fair, to the detriment of TCG.

On July 10, 2007, LKO filed a complaint against Fair and TCG for declaratory relief regarding the allocation of ownership interests in TCG, breach of contract, and breach of fiduciary duty (the contract action). Fair and TCG later filed a complaint against Powers for legal malpractice (the malpractice action). The trial court consolidated the actions.

Fair moved for partial summary judgment. Although Fair would not concede a joint venture agreement had in fact been entered, he argued that even if it were, any such agreement would be void as violative of public policy because Powers did not comply with former RPC 1.8(a), which restricts an attorney's ability to enter business transactions with current clients. TCG filed a motion for partial summary judgment based on an argument similar to Fair's and claimed Powers violated several other former RPCs in addition to former RPC 1.8(a).

Powers filed a cross motion for partial summary judgment, requesting the trial court to dismiss the legal malpractice action. Powers argued that there was a joint venture agreement between TCG and LKO, no attorney was a party to that agreement, and no RPC violation could have occurred as a matter of law. Powers also argued that neither Fair nor TCG was a client of the Law Firm when the joint venture proposal was offered and accepted, so former RPC 1.8(a) would not apply even if Powers or the Law Firm were a party to that agreement. Finally, Powers asserted Fair had not suffered any damages and could not assert even a prima facie case for legal malpractice. LKO joined Powers' cross motion for summary judgment, requesting the trial court hold, as a matter of law, that there was no former RPC 1.8(a) violation.

The trial court reviewed the voluminous materials provided by the parties, took the matter under advisement, and issued two memorandum decisions,

ultimately determining on summary judgment that Mr. Powers[4] violated former RPC 1.7 because the Law Firm simultaneously represented LKO and Fair in his personal capacity, without obtaining informed consent from either.[5] Therefore, the trial court held the business transaction contemplated by the joint venture proposal was voidable pursuant to *C.B.&T. Co. v. Hefner*, 1982-NMCA-131, 98 N.M. 594, 651 P.2d 1029, which the trial court considered as persuasive authority, having found no Washington State case law directly on point. The trial court determined that rescission of the joint venture agreement was the appropriate remedy for Mr. Powers' breach of fiduciary duty regarding the former RPC 1.7 violation. Therefore, the trial court determined that whether former RPC 1.8(a) was also violated was a moot issue.

Consequently, the trial court entered an order, prepared by counsel for TCG, incorporating the court's memorandum decisions by reference, granting Fair's and TCG's motions for summary judgment, denying Powers' cross motion for summary judgment, dismissing with prejudice the claims brought by LKO against Fair and TCG, and reserving ruling on the questions of attorney fees and damages. On motion

---

[4]The trial court determined there was a genuine issue of fact as to whether Mr. Powers' former RPC 1.7 violation could be imputed to Mr. Therrien.

[5]It appears the trial court raised the question of former RPC 1.7 sua sponte. The parties do not challenge the propriety of this on review.

by Fair and TCG, and over LKO's objections, the trial court then ordered the contract action and the malpractice action bifurcated for trial purposes.

The remaining issues to be addressed at the contract action trial were whether LKO was the real party in interest, the amount of damages flowing from the rescission, whether and how much interest should accrue on the investments already made in TCG, and attorney fees. Following a bench trial, the trial court issued an oral decision that it would award LKO damages of the total funds it had invested in TCG, plus pre- and postjudgment interest.

The parties filed substantial briefing regarding the findings of fact and conclusions of law that should issue following the bench trial and participated in further oral argument. Ultimately, the trial court entered findings of fact, conclusions of law, and a final judgment and order dismissing with prejudice all claims by LKO against Fair and his wife and marital community. In addition to the damages award as announced in its oral decision, the trial court awarded statutory attorney fees of $250 to LKO, and the court denied Fair's and TCG's request for attorney fees. LKO appealed, and Fair and TCG cross appealed.

LKO argued on appeal that the trial court erred in determining that Fair or TCG was a Law Firm client during the relevant time period; that the trial court erred in ordering summary judgment when material facts were still in dispute; that even if there were a former RPC 1.7 violation, it would not justify rescission; that the trial

court failed to properly consider all the equitable implications of rescission, particularly because no fraud or misrepresentation was found; and that the appropriate remedy, if there were a violation of former RPC 1.7, would be limited to an attorney disciplinary action against Mr. Powers.

Fair and TCG argued on appeal that the trial court should be affirmed in its decisions that Mr. Powers violated former RPC 1.7 and that rescission was the appropriate remedy. Fair and TCG also argued that the Court of Appeals could affirm on the alternate basis that Mr. Powers violated former RPC 1.8(a) as a matter of law. Mr. Powers and Mr. Therrien were permitted to intervene in the direct appeal in their personal capacities. Powers argued that the Court of Appeals should not consider the merits of whether Mr. Powers violated former RPC 1.8(a).

The Court of Appeals, Division Three, affirmed the trial court's rescission order and final judgment in a published opinion. *LK Operating, LLC v. Collection Grp., LLC*, 168 Wn. App. 862, 279 P.3d 448, 287 P.3d 628 (2012). The appellate court agreed Mr. Powers had violated former RPC 1.7 but determined rescission was not the appropriate remedy for that violation. However, the appellate court went on to determine that Mr. Powers had violated former RPC 1.8(a), and that violation was a proper ground upon which to affirm the remedy of rescission.

LKO and Powers petitioned for review, arguing that the Court of Appeals violated their due process rights in analyzing Mr. Powers' alleged violation of

former RPC 1.8(a) on the merits; that the Court of Appeals erred in holding Mr. Powers had violated former RPC 1.8(a); and that, in any event, rescission was not the appropriate remedy. We granted the petitions. *LK Operating, LLC v. Collection Grp., LLC*, 176 Wn.2d 1027, 301 P.3d 1048 (2013).

## II. ISSUES

1.  Did the Court of Appeals violate Powers' or LKO's due process rights in considering the merits of Fair's and TCG's claim that Mr. Powers entered the business transaction contemplated by TCG's joint venture proposal in violation of former RPC 1.8(a)?

2.  Did the Court of Appeals err in holding that Mr. Powers entered the business transaction in violation of former RPC 1.8(a)?

3.  Did the Court of Appeals err in affirming the trial court's holding that Mr. Powers entered the business transaction in violation of former RPC 1.7?[6]

4.  Did the Court of Appeals err in affirming the trial court's remedy of rescission?

## III. ANALYSIS

A.  The proceedings below satisfied procedural due process

LKO and Powers both contend that the Court of Appeals erred in considering the merits of Mr. Powers' alleged former RPC 1.8(a) violation because doing so violated their due process rights under article I, section 3 of the Washington State

---

[6]Powers raises this issue in the companion case, which is before this court on direct appeal pursuant to RAP 4.4. *LK Operating, LLC v. Collection Grp., LLC*, No. 88846-9. Because it has significantly more relevance to this opinion and very little relevance to the resolution of the companion case, Mr. Powers' alleged former RPC 1.7 violation is addressed only here, and is reviewed in light of the conclusions reached on direct appeal. *Cf.* RAP 2.4(b)(1). We do not address the former RPC 1.7 issues in the companion case to avoid unnecessarily duplicative opinions. *Cf. Sprague v. Safeco Ins. Co. of Am.*, 174 Wn.2d 524, 528, 276 P.3d 1270 (2012).

Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.[7] Constitutional challenges present questions of law reviewed de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

We are first tasked with evaluating the interests Powers and LKO assert to determine whether they assert life, liberty, or property interests subject to due process protections as a matter of law. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). If we hold that either party asserts a protected interest, we must then determine whether, in light of the protected interest at stake, the proceedings below were sufficient to satisfy due process demands. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989).

We hold that Powers has not asserted any interest in this litigation subject to due process protections. LKO has asserted a protected property interest in enforcement of the business transaction contemplated by the joint venture proposal, but the proceedings below satisfied due process.

1. Powers does not assert any interest in the contract action subject to due process protections

Powers has repeatedly denied any interest in the enforcement of the business transaction contemplated by the joint venture proposal itself. Powers' asserted interests in the contract action are Powers' professional reputation and license to

---

[7]We presume the analysis is the same under both constitutions, as the parties do not contend otherwise. *See Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 7 n.7, 256 P.3d 339 (2011).

practice law.[8] Neither is subject to procedural due process protections under the circumstances presented herein.

Neither Mr. Powers' nor Mr. Therrien's asserted interest in his professional reputation is, without more, a liberty or property interest subject to procedural due process protections. *In re Pers. Restraint of Meyer*, 142 Wn.2d 608, 620-22, 16 P.3d 563 (2001) (citing *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). The reputational interest (as opposed to professional licensing interest) the attorneys assert is consistent with the "interest in reputation and future employment opportunities" the United States Supreme Court has held is not subject to due process protections. *Id.* at 620 (citing *Paul*, 424 U.S. at 701; *see* Br. of Intervenors or Br. of Amici Les Powers and Keith Therrien at 4 ("Powers could . . . suffer harm to his personal and professional reputation. Therrien, as Powers' law partner, could likewise be prejudiced personally and professionally."). While the Law Firm could possibly assert a protectable business interest in its reputation in the community, the Law Firm, as an entity, is not a party in the matter on review before this court.

As to Powers' interest in its license to practice law, that interest is not implicated here. The authority Powers offers to show an attorney has a due process

---

[8]Powers' interests in the contract action, for due process purposes, are not actually identified in Powers' briefing to this court. Pursuant to RAP 1.2, we will assume Powers asserts the same interests here as those it asserted to justify its intervention in the direct appeal pursuant to RAP 10.6(b). *See* Br. of Intervenors or Br. of Amici Les Powers and Keith Therrien at 4.

14

right to participate in his or her own disciplinary proceedings is not material. *E.g.,* ELC 2.13(a), 10.11, 10.13, and 10.14(b); *In re Disciplinary Proceeding Against Haley,* 156 Wn.2d 324, 126 P.3d 1262 (2006); *In re Disciplinary Proceeding Against Greenlee,* 82 Wn.2d 390, 510 P.2d 1120 (1973); *In re Disciplinary Proceeding Against Little,* 40 Wn.2d 421, 244 P.2d 255 (1952). Attorney disciplinary actions implicate the respondent attorney's interests directly in ways that are simply not comparable to the interests at stake in other legal proceedings where RPC violations are legally relevant.

In the attorney discipline context, a respondent attorney may be subject to financial penalties, limitations on the attorney's license to practice law, or both. ELC 13.1. Governmental restrictions on or deprivations of one's professional license clearly implicate interests subject to due process protections. *Wash. Med. Disciplinary Bd. v. Johnston,* 99 Wn.2d 466, 474, 663 P.2d 457 (1983). The potential for such consequences easily justifies the application of due process protections in attorney disciplinary matters. *In re Disciplinary Proceeding Against Romero,* 152 Wn.2d 124, 136-37, 94 P.3d 939 (2004).

No comparable potential consequence attaches here—no money judgment was issued against Powers or the Law Firm, and Powers' license to practice law cannot be limited in any way as a direct consequence of this proceeding. Attorney disciplinary actions require a higher standard of proof than the civil preponderance

standard, ELC 10.14(b), and whether a given set of facts establish an RPC violation is a question of law, *In re Disciplinary Proceeding Against King*, 170 Wn.2d 738, 741, 246 P.3d 1232 (2011). Further, even when an RPC violation has been proved in a disciplinary proceeding, the violation is *not*, in itself, sufficient to impose any discipline on the attorney. *In re Disciplinary Proceeding Against Cramer*, 165 Wn.2d 323, 339, 198 P.3d 485 (2008); *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 526-27, 663 P.2d 1330 (1983) (holding that while respondent attorney violated former Code of Professional Responsibility Disciplinary Rule 5-104 (1972) in entering a business transaction with a client without necessary safeguards, professional discipline was not warranted due to the "relatively undefined" nature of the attorney-client relationship at issue, the attorney's good faith, and the lack of harm to the client).

Because Powers' asserted interests are either not subject to due process protections or not implicated here, Powers could not have been deprived of due process in the proceedings below, as a matter of law.

2.    LKO was provided sufficient due process to protect its interest

LKO plainly asserts a protected interest in the enforcement of the business transaction contemplated by the joint venture proposal and is entitled to due process in any judicial proceeding in which it faces potential deprivation of that interest. *Cf. Dix Steel Co. v. Miles Constr., Inc.*, 74 Wn.2d 114, 119, 443 P.2d 532 (1968) ("The

16

courts will uphold whatever lawful agreement the parties made with each other.").

LKO argues it had no meaningful opportunity to present a defense regarding the alleged former RPC 1.8(a) violation because the trial court did not adjudicate that issue, determining at summary judgment that it was moot. LKO's arguments do not establish any procedural due process violation; at most, LKO alleges legal errors, subject to review by this court.

In the context of a judicial proceeding, where a denial of due process is alleged, a reviewing court must consider:

> "The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, [and] the balance of hurt complained of and good accomplished."

*Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 423-24, 511 P.2d 1002 (1973) (alteration in original) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 163, 71 S. Ct. 624, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring)). "[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971).

The nature of the interest here is LKO's property interest in the business transaction contemplated by the joint venture proposal—this interest is purely financial, and so the level of due process that is constitutionally required, though real, is on the low end of the spectrum. *Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 23-24 & n.13, 256 P.3d 339 (2011).

The record clearly shows LKO had sufficient notice that former RPC 1.8(a) would be at issue on appeal. Fair raised former RPC 1.8 as an issue before any of this litigation commenced; at the trial court level, TCG moved for partial summary judgment based, in part, on an argument that Powers violated former RPC 1.8(a); TCG and Fair raised the former RPC 1.8(a) issue in their direct cross appeal;[9] and Powers was permitted to intervene and file briefing at the Court of Appeals regarding the former RPC 1.8(a) issue.

LKO also had ample opportunity to be heard on the question of Powers' former RPC 1.8(a) violation, and both Powers and LKO presented forceful arguments to the Court of Appeals that former RPC 1.8(a) did not apply to the business transaction contemplated by the joint venture proposal as a matter of law. Where an issue of law is raised, briefed, and argued by the parties but not decided by the trial court, an appellate court may resolve the issue on review, and that is what

---

[9]LKO's assertion that the Court of Appeals raised the former RPC 1.8 issue sua sponte is not supported by the record but would not, in itself, constitute a due process violation in any event. *See City of Seattle v. McCready*, 123 Wn.2d 260, 268-70, 868 P.2d 134 (1994).

happened here. *Cf. Weden v. San Juan County*, 135 Wn.2d 678, 695-96, 958 P.2d 273 (1998); *Bock v. State*, 91 Wn.2d 94, 95 n.1, 586 P.2d 1173 (1978).

LKO argues two alternative procedures should have been employed in the context of the matter before us. We hold neither was required to comply with procedural due process. LKO first argues that the trial court should have sua sponte joined Powers as a necessary or indispensable party to the bench trial on the contract action.[10] LKO does not specify whether it means to argue Powers was merely a necessary party within the meaning of CR 19(a), or also an indispensable party within the meaning of CR 19(b). *See generally Auto. United Trades Org. v. State*, 175 Wn.2d 214, 222-35, 285 P.3d 52 (2012). In either event, this argument is unpersuasive in light of substantial authority outside the attorney disciplinary context where courts have needed to determine whether a nonparty attorney violated one or more RPCs to resolve claims between the parties. *E.g., State v. Shelmidine*, 166 Wn. App. 107, 114, 269 P.3d 362 (2012) (rejecting ineffective assistance of counsel claim because "defense counsel could competently and diligently represent Shelmidine in compliance with the RPCs"); *Sanders v. Woods*, 121 Wn. App. 593, 597-600, 89 P.3d 312 (2004) (reversing trial court's refusal to disqualify

---

[10]LKO notes that Powers did not testify at trial. We cannot make any factual findings as to why Powers did not testify. *Old Windmill Ranch v. Smotherman*, 69 Wn.2d 383, 390-91, 418 P.2d 720 (1996). We also do not draw any legal conclusions therefrom—distinct inquiries are presented in determining whether a party is necessary, whether a witness may testify as a matter of law, and whether a witness should testify as a matter of trial strategy. *Compare, e.g.,* CR 19, *with* ER 601, *and State v. Thomas*, 71 Wn.2d 470, 472, 429 P.2d 231 (1967).

respondent's attorney where attorney had a conflict of interest under RPC 1.9); *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 811-12, 881 P.2d 1020 (1994) (affirming trial court's refusal to disqualify respondent's attorney in light of RPC 3.7); *see generally* Ellen S. Podgor, *Criminal Misconduct: Ethical Rule Usage Leads to Regulation of the Legal Profession*, 61 TEMP. L. REV. 1323, 1333-35 & nn.66-74, 78-83 (1988).

LKO also argues the Court of Appeals should have sua sponte directed further fact-finding pursuant to RAP 9.11 because the record did not contain sufficient, undisputed facts to decide Fair's and TCG's claim regarding former RPC 1.8(a). However, the protections inherent in judicial review ensure that, even assuming the Court of Appeals should have requested further fact-finding, its failure to do so was an error of law, not a due process violation. If the Court of Appeals erroneously made and relied on new factual findings to support its holdings, those findings are mere surplusage to be disregarded on review. *Grader v. City of Lynnwood*, 45 Wn. App. 876, 879, 728 P.2d 1057 (1986). If the undisputed facts in the record do not support the Court of Appeals' holdings as a matter of law, those holdings are subject to reversal by this court. *DGHI Enters. v. Pac. Cities, Inc.*, 137 Wn.2d 933, 942-43, 977 P.2d 1231 (1999).

Based on the foregoing, the proceedings below did not violate either Powers' or LKO's rights to procedural due process.

B.   The Court of Appeals did not err in holding Mr. Powers entered the business transaction contemplated by the joint venture proposal in violation of former RPC 1.8(a)

Whether a given set of facts establish an RPC violation is a question of law subject to de novo review. *King*, 170 Wn.2d at 741. Because the alleged violation of former RPC 1.8(a) is before this court, ultimately upon TCG's and Fair's motion for summary judgment at the trial level, all reasonable inferences and disputed facts will be construed in favor of LKO and Powers, the nonmoving parties. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013).[11]

In determining that the business transaction contemplated by the joint venture proposal was entered in violation of former RPC 1.8(a),[12] the Court of Appeals held as follows:

> Mr. Powers may not have been the "alter ego" of LKO but that is not dispositive. He accepted the offer to invest in TCG in his capacity as an attorney and then caused LKO to contribute the funds. He had a substantial interest in the success of LKO—it was his family.

*LK Operating*, 168 Wn. App. at 880. LKO and Powers argue that the Court of Appeals' decision renders the contours of former RPC 1.8(a) unconstitutionally

---

[11]RAP 9.12 notwithstanding, in order to facilitate a decision on the merits, we conduct our review in light of the entire record. RAP 1.2(a), (c); *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 702, 934 P.2d 715 (1997). The record includes the trial court's findings of fact following the bench trial in the contract action. Those findings are not challenged on review and thus treated as verities. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Additionally, any facts the trial court deemed undisputed at summary judgment became established facts in the contract action at the point the bench trial commenced. CR 56(d). This approach is consistent with that taken in the parties' briefing.

[12]Former RPC 1.8 has many subsections. Though the Court of Appeals does not specify, it is clear it based its holding on former RPC 1.8(a).

vague because it applies former RPC 1.8(a) to a business transaction solely between nonlawyers—TCG and LKO. We agree that the Court of Appeals' ruling could be misread as giving former RPC 1.8(a) an overly nebulous scope. However, that does not end our inquiry, as an appellate court may affirm a decision on any ground supported by the record. *Otis Hous. Ass'n v. Ha*, 165 Wn.2d 582, 587, 201 P.3d 309 (2009).

We begin with the text of the rule at issue. At the relevant time, former RPC 1.8 provided in part:

> A lawyer who is representing a client in a matter:
> **(a)** Shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
> (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
> (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
> (3) The client consents thereto.

LKO and Powers argue TCG's joint venture proposal led to an agreement between only LKO and TCG, and because neither is an attorney, former RPC 1.8(a) cannot apply as a matter of law. TCG and Fair, meanwhile, argue Mr. Powers entered the business transaction contemplated by the joint venture proposal, as did his client TCG, and Mr. Powers did not comply with former RPC 1.8(a) as required.

We agree with TCG and Fair. The business transaction at issue, for the purposes of former RPC 1.8(a), is comprised of all the terms TCG proposed in its October 2004 e-mail to Powers. One such term was that TCG would give up an ownership interest in its business in exchange for no-cost legal services. As such, the business transaction contemplated by the joint venture proposal is within the scope of former RPC 1.8(a) and the attorney providing legal services pursuant to this business transaction would be subject to the requirements of former RPC 1.8(a). It is undisputed Mr. Powers provided TCG legal services pursuant to the business transaction contemplated by the joint venture proposal, and Mr. Powers did not meet the requirements of former RPC 1.8(a).

1.     The business transaction at issue is the entire set of arrangements contemplated by the joint venture proposal

To determine whether former RPC 1.8(a) applies at all, a preliminary issue is what, precisely, the underlying business transaction actually is. The benefits and burdens that were to be exchanged are not disputed, but the appropriate characterization of that exchange, and to whom the benefits and burdens were intended to accrue, is heavily disputed.

LKO and Powers characterize the arrangements as follows: LKO, through Mr. Powers as its agent, accepted TCG's joint venture proposal as offered in a late October 2004 e-mail. In doing so, LKO assumed responsibility for 50 percent of TCG's costs and for arranging, at no additional cost, the legal services TCG needed

23

to run its business. In exchange, LKO received a 50 percent ownership interest in TCG. LKO then made an entirely separate, unwritten agreement with Mr. Powers that the Law Firm would provide TCG's legal services. Wash. Supreme Court oral argument, *LK Operating, LLC v. Collection Grp., LLC*, No. 88132-4 (Oct. 8, 2013), at 13 min., 22 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. Because this issue is before us on summary judgment, we assume that LKO's and Powers' characterization is an accurate description of the facts.

We hold that the relevant business transaction, for purposes of former RPC 1.8(a), encompasses all the terms of TCG's joint venture proposal as set forth in Fair's October 2004 e-mail. The agreement by which Mr. Powers and LKO divided the benefits and burdens of the business transaction between themselves does not, as a matter of law and under the facts presented, change the essential nature of the business transaction at issue for the purposes of TCG's claim that the agreement was entered in violation of former RPC 1.8(a).

When interpreting the meaning of any RPC, we apply settled principles of statutory construction. *In re Disciplinary Proceeding Against Blauvelt*, 115 Wn.2d 735, 741, 801 P.2d 235 (1990). Our goal is to give effect to the intent behind the rule, which we discern, where possible, from the plain language of the rule at issue in the context of the RPCs as a whole. *In re Pers. Restraint of Adams*, 178 Wn.2d

417, 423, 309 P.3d 451 (2013). Former RPC 1.8(a) applies to "business transaction[s]." This term is not defined within the RPCs, so we look to dictionary definitions for its ordinary meaning. *State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003). Even if LKO and Powers are correct in their assertion that this case presents two discrete *agreements*, it presents only one *business transaction*, within the ordinary meaning of that term.

A "business transaction" may be defined as "[a]n action that affects the actor's financial or economic interests, including the making of a contract." BLACK'S LAW DICTIONARY 227 (9th ed. 2009). Under this definition, because "transactions" include "contracts," "transactions" necessarily represents a broader set of arrangements than "contracts"—in the same sense that all squares are rectangles but not all rectangles are squares. If former RPC 1.8(a) were intended to apply only to the narrower set of discrete "contracts," the rule would use the word "contract," rather than the broader term "transaction." *See In re Dependency of J.W.H.*, 147 Wn.2d 687, 696, 57 P.3d 266 (2002) ("Unambiguous statutory language is accorded its plain meaning on the theory that the legislature is presumed to mean 'exactly what it says.'" (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999))). Former RPC 1.8(a) uses the broader term, and we interpret that language as a conscious choice on the part of the drafters.

Further support for this broad definition can be found in the comments to the corresponding American Bar Association's former *Model Rules of Professional Conduct* (2004) (*Model Rules*), which we may look to as an "'instructive'" resource when considering the application of the former RPCs.[13] *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 595, 48 P.3d 311 (2002) (quoting *State v. Hunsaker*, 74 Wn. App. 38, 46, 873 P.2d 540 (1994)). The comments provide that the rule governs transactions "even when the transaction is not closely related to the subject matter of the representation." MODEL RULES R. 1.8 cmt. 1. They further specify where certain agreements that might normally be considered "business transactions" are *not* covered:

> It does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of a fee. In addition, the Rule does not apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others.

*Id.* The decision to include defined, specific exemptions indicates that anything reasonably characterized as an attorney-client business transaction is subject to the

---

[13] At the time the joint venture proposal was made and acted upon, former RPC 1.8(a) did not have any official commentary; official comments were first added to the RPCs in 2006. WASH. STATE BAR ASS'N, *Report and Recommendation of the Special Committee for Evaluation of the Rules of Professional Conduct (Ethics 2003) to the Board of Governors* 9 (2004), *available at* http://www.wsba.org/Resources-and-Services/Ethics/Ethics-2003/Final-Report (Report - Part 1 (Table of Contents, Overview, Summary of Recommendations, Conclusion)); Johanna M. Ogden, Comment, *Washington's New Rules of Professional Conduct: A Balancing Act*, 30 SEATTLE U. L. REV. 245, 246 (2006).

rule's requirements unless specifically exempted. *See In re Disciplinary Proceeding Against Sanai,* 177 Wn.2d 743, 767-68, 302 P.3d 864 (2013).

As characterized by LKO and Powers, in entering the joint venture with TCG, LKO assumed a contractual duty to arrange for the provision of TCG's legal services. If LKO had not done so, the terms of the joint venture—the "action" by which TCG's "financial or economic interest[]" was to be "affect[ed]," BLACK'S LAW DICTIONARY at 227—would not have been completed.[14] It is thus clear that the agreement between LKO and Mr. Powers arranging for TCG's legal services was nothing more than an incidental component of the overall business transaction set forth in TCG's joint venture proposal.

In the context of former RPC 1.8(a), we cannot hold the joint venture between LKO and TCG represents a distinct business transaction from the agreement arranging for TCG's legal services between LKO and Mr. Powers. Under the particular factual circumstances presented and for purposes of former RPC 1.8(a), we hold the relevant business transaction encompasses all the terms contemplated by TCG's joint venture proposal as memorialized in its October 2004 e-mail to

---

[14]We do not mean to imply that had LKO not arranged for legal services, TCG's financial interest would be entirely *un*affected on a theory that such partial nonperformance might allow TCG to rescind the business transaction based on contract principles (or any similar argument). We are not asked to and do not make any such determination.

Powers. These terms are not disputed, and we are thus able to analyze whether and how former RPC 1.8(a) applies as a matter of law.

> 2. The terms of the business transaction at issue place it within the scope of former RPC 1.8(a)

Having defined the relevant business transaction, we must next determine whether, based on its terms, that transaction falls within the scope of former RPC 1.8(a). We hold it does because the joint venture proposed an exchange of legal services for an ownership interest in TCG, notwithstanding the fact that Mr. Powers did not personally acquire that ownership interest.

Construed in the light most favorable to Powers and LKO, TCG became a Law Firm client contemporaneously with and by virtue of the business transaction contemplated by TCG's joint venture proposal. Ordinarily, a business transaction entered at the outset of an attorney-client relationship establishing the amount and terms of payment the client will tender in exchange for legal services—that is to say, a fee agreement—would be governed by former RPC 1.5. MODEL RULES R. 1.8 cmt. 1. However, where "the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of a fee," former RPC 1.8(a) also applies. MODEL RULES R. 1.8 cmt. 1.

This case presents an unusual situation. TCG offered an ownership interest in itself as consideration for legal services and financial contributions. Because we construe the facts in favor of the nonmoving parties, we assume neither Powers nor

LKO ever intended that the consideration offered by TCG would flow to the attorney actually providing legal services (Mr. Powers). Rather, we assume the consideration offered by TCG was intended by Powers and LKO to flow solely to LKO.[15]

Nevertheless, former RPC 1.8(a) is implicated where an attorney "enter[s] into a business transaction with a client *or* knowingly acquire[s] an ownership, possessory, security or other pecuniary interest adverse to a client." Under ordinary principles of statutory construction, the use of the disjunctive clearly contemplates a situation where an attorney enters a business transaction with a client without actually acquiring any pecuniary interest adverse to the client (or vice versa). *See State v. Hecht*, 173 Wn.2d 92, 94-95, 264 P.3d 801 (2011) (citing *In re Marriage of Caven*, 136 Wn.2d 800, 807, 966 P.2d 1247 (1998)).

Based on the terms of the joint venture proposal, we can conclude only that any attorney providing TCG with legal services pursuant to the proposal's terms would necessarily effect a transfer of TCG's ownership interest away from TCG and to some other party. Therefore, that attorney, assuming he or she was aware of the proposal terms, would have accepted a business transaction wherein an ownership in the client's business would clearly be exchanged for legal services. Whether the

---

[15]*Cf.* Wash. Supreme Court oral argument, *LK Operating, LLC v. Collection Grp., LLC*, No. 88846-9 (Oct. 8, 2013), at 31 min., 53 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org (Powers asserting at oral argument in the companion case that the only consideration Mr. Powers received for his legal services to TCG was the psychological benefit of aiding LKO's investment in TCG).

attorney and a third party agreed between themselves that the third party would take possession of that ownership interest is not material to the question actually presented—Where a joint venture proposal for a business transaction offers a share in the client's business in exchange for attorney services and financial contributions, does an attorney providing legal services pursuant to the terms of the proposal have to comply with former RPC 1.8(a)? The answer, under the circumstances presented and as discussed above, is clearly yes.

### 3. Mr. Powers entered the business transaction at issue in his capacity as an attorney

Thus far, we have established that all terms of the joint venture proposal comprise a single business transaction, for purposes of former RPC 1.8(a), and we have established that the terms of that transaction necessarily implicate former RPC 1.8(a) as to the attorney who provided legal services pursuant to that transaction. Now we must determine whether Mr. Powers is that attorney. We have little difficulty in doing so.

Powers and LKO rightly argue that as a general proposition, the RPCs govern only attorney conduct.[16] *See, e.g.*, RPC pmbl. para. 13 ("Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by

---

[16]There are exceptions to this general proposition, but none are relevant here. *E.g.*, RPC 5.3 (requiring attorneys with managerial or supervisory authority to make reasonable efforts to ensure nonattorney assistants comply with the RPCs).

lawyers of their relationship to our legal system. The [RPCs], when properly applied, serve to define that relationship."). Therefore, Powers and LKO argue that former RPC 1.8(a) cannot apply to the business transaction contemplated by TCG's joint venture proposal if that transaction was solely between nonattorneys. However, based on the undisputed facts and as a matter of law, Mr. Powers did enter this business transaction, at least in part, in his capacity as an attorney.

As discussed above, the joint venture proposal contemplated the exchange of an ownership interest in TCG for legal services and financial investments. The trial court found, and the parties do not dispute, that "LKO is not a law firm, and is not in the business of providing legal services." CP at 1252. The trial court also found, and the parties do not dispute, that "[p]rofessional legal services sought by TCG as part of the Proposal were provided by Powers & Therrien, P.S." CP at 2304. In light of these findings, and because the business transaction at issue for purposes of former RPC 1.8(a) includes all terms in the joint venture proposal, it simply *cannot* be the case that *only* TCG and LKO were parties to that business transaction. Mr. Powers, LKO, and TCG *all* entered the business transaction at issue. Because Mr. Powers' role in this business transaction was, at least in part, the provision of legal services to TCG, it is axiomatic that Mr. Powers entered the business transaction in his role as an attorney. *See* GR 24(a).

31

LKO and Powers assert that because the damages following rescission were awarded to only LKO, the trial court made an implied finding of fact that the business transaction at issue was between exactly two parties—LKO and TCG. This is incorrect. The fact that the damages were awarded to LKO simply reflects the trial court's finding that LKO made the financial contributions in TCG contemplated by the joint venture proposal. It is undisputed that financial contributions were *not* the only consideration TCG was to receive under the joint venture proposal—TCG would also receive legal services at no cost to run its business.

The trial court did not decide whether Powers violated former RPC 1.8(a) and did not analyze the scope of the relevant business transaction or parties thereto within the meaning of that rule. The record contains no written[17] findings on this issue, and, indeed, the findings that were entered suggest the trial court intentionally declined to reach it. CP at 2311-12.[18] The fact that there is no explicit trial court decision on

---

[17]We look to the trial court's written findings, rather than its oral statements, as a trial court is free to reconsider its determinations between the time it announces an oral decision and the time it enters written findings. *Ferree v. Doric Co.*, 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963).

[18]Final judgment entered by the trial court, including the phrase "the court having ruled that TCG is liable to plaintiff as a result of the court previously having found that *any* business transaction between LKO and TCG is subject to rescission." CP at 2311-12.

The trial court clearly handwrote the word "any." CP at 2312. "Washington courts have repeatedly construed the word 'any' to mean 'every' and 'all'." *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991). The trial court's intentional use of this "broad and inclusive term," *S.L. Rowland Construction Co. v. Beall Pipe & Tank Corp.*, 14 Wn. App. 297, 306, 540 P.2d 912 (1975), reflects the care taken by the trial court to ensure its findings and conclusions accurately reflected only the determinations it actually made. That one determination it did *not* make was the precise nature of and parties to the business transactions underlying this case for the purposes of former RPC 1.8(a).

the scope of or parties to the transaction is significant because the record clearly reflects an admirable level of care and conscientiousness on the part of the trial judge.[19]

Finally, even if the trial court had clearly determined the business transaction at issue was limited to a joint venture agreement between LKO and TCG, such a determination would rest on the interpretation of former RPC 1.8(a) as applied to a given factual arrangement—a matter of law, not one of fact.

The business transaction at issue provided that TCG would receive financial investments and professional legal services. It is undisputed that LKO provided the financial investments and Mr. Powers and the Law Firm provided the legal services. As a matter of law, TCG, LKO, and Mr. Powers were all parties to the business transaction at issue. In providing legal services to TCG pursuant to this business transaction, Mr. Powers necessarily acted in his capacity as an attorney. GR 24(a). Therefore, as a matter of law, this business transaction was not solely between nonlawyers.

4.    Mr. Powers violated former RPC 1.8(a) as a matter of law

Because the business transaction contemplated by the joint venture proposal falls within the scope of former RPC 1.8(a) and because Mr. Powers entered the

---

[19]For instance, the clerk's papers contain over 150 pages of materials relating solely to the entry of findings, conclusions, and judgment following the bench trial held in the contract action, including memoranda, multiple proposed drafts by the parties, and minute entries from several hearings. CP at 2149-258, 2269-313.

transaction in his role as an attorney, we are now tasked with determining whether Mr. Powers complied with former RPC 1.8(a). "The burden of proving compliance with RPC 1.8 rests with the lawyer; 'an attorney-client transaction is prima facie fraudulent.'" *Valley/50th Ave., LLC v. Stewart*, 159 Wn.2d 736, 745, 153 P.3d 186 (2007) (quoting *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 704, 826 P.2d 186 (1992)). "A lawyer must prove strict compliance with the safeguards of RPC 1.8(a)." *Id.*

Based on the undisputed facts taken in the light most favorable to LKO, Mr. Powers did not meet the requirements of former RPC 1.8(a). While it is undisputed that TCG proposed the initial terms, the agreement ultimately entered was not the same as the agreement originally proposed. The parties do not dispute that the joint venture proposal was made by TCG to Powers. As discussed above, the resulting business transaction ultimately entered was between TCG, Powers, *and* LKO. Powers and LKO acknowledge Mr. Powers never made any written communication to TCG setting forth the final parties to the joint venture and the parties' respective roles. Surely the parties to a transaction are essential terms of that transaction. It does not matter that the trial court found that TCG did not care who made the financial investment—compliance with former RPC 1.8(a) is entirely the attorney's responsibility, *Valley/50th Ave.*, 159 Wn.2d at 745, and the rule contains no exceptions for apathetic clients.

Because the business transaction contemplated in the joint venture proposal was never memorialized in a writing reflecting both its provisions and the parties to it, the "transaction and terms" were not "fully disclosed and transmitted in writing to the client" as required by former RPC 1.8(a)(1). We need go no further to hold the business transaction contemplated by the joint venture proposal was entered in violation of former RPC 1.8(a).

C.     The Court of Appeals did not err in holding Mr. Powers violated former RPC 1.7

On review, it is abundantly clear that Mr. Powers did, as a matter of law, violate former RPC 1.7,[20] as the Court of Appeals correctly held in *LK Operating*, 168 Wn. App. at 872-73. We see no need to expand on the Court of Appeals' analysis on this point:

---

[20]Former RPC 1.7 provides, in pertinent part:
   **(a)** A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
   (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
   (2) Each client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure).
   **(b)** A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
   (1) The lawyer reasonably believes the representation will not be adversely affect; and
   (2) The client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure).   When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Mr. Powers represented both Mr. Fair and LKO in separate, unrelated matters and then represented LKO in the business transaction with Mr. Fair by relaying the investment proposal and forwarding the funds. Mr. Powers had a duty to disclose his personal interest in LKO, his legal duties as manager of LKO, and his professional duties as an attorney for LKO. The representation of Mr. Fair was directly adverse to the representation of LKO in the transaction and there is no evidence that either client gave informed consent in writing.

*Id.* at 873. We affirm.

D.   The Court of Appeals did not err in affirming the trial court's rescission of the business transaction contemplated by the joint venture proposal

LKO asserts that rescinding the business transaction contemplated by the joint venture proposal was not the proper remedy because it penalizes LKO, which did nothing wrong. As a matter of law, "[c]ontract terms are unenforceable on grounds of public policy when the interest in its enforcement is clearly outweighed by a public policy against the enforcement of such terms." *State v. Noah*, 103 Wn. App. 29, 50, 9 P.3d 858 (2001) (citing RESTATEMENT (SECOND) OF CONTRACTS § 178 (1981)). We hold, as a matter of law, that the business transaction contemplated by the joint venture proposal is unenforceable on public policy grounds, and we affirm the remedy imposed by the trial court.

1.   Contracts formed in violation of the RPCs are unenforceable to the extent that they contravene public policy

We have previously and repeatedly held that violations of the RPCs or the former Code of Professional Responsibility in the formation of a contract may render that contract unenforceable as violative of public policy. *E.g., Valley/50th Ave.*, 159

Wn.2d at 743; *Belli v. Shaw*, 98 Wn.2d 569, 578, 657 P.2d 315 (1983). We take this opportunity to explain why and to address the concerns raised by the dissent.

<blockquote>a)      The RPCs can be sources of public policy relevant to the enforceability of contracts</blockquote>

"'In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy.'" *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984) (quoting 17 C.J.S. *Contracts* § 211, at 1024 (1963)). Former RPC 1.8(a) is not a statute, of course, and we decline to address the nebulous realm of the public morals in this opinion.

One could argue the RPCs, as rules promulgated by this court, represent a "judicial decision," but it is not necessary to do so because there is nothing talismanic about the words "statute" or "judicial decision." If there were, we could not find principles of public policy in, for example, the state and federal constitutions or court rules governing civil procedure. Our cases, however, have recognized both as potential public policy sources. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 524, 210 P.3d 318 (2009) (distinguishing, but implicitly approving, a Court of Appeals opinion holding a contract violates public policy where it would, among other concerns, injure a person's "right to counsel and to a fair trial" (citing *Marshall v. Higginson*, 62 Wn. App. 212, 216, 813 P.2d 1275 (1991))); *Scott v. Cingular*

37

*Wireless*, 160 Wn.2d 843, 851,161 P.3d 1000 (2007) (citing CR 23 as a source of state public policy).

The underlying inquiry when determining whether a contract violates public policy is whether the contract "has a tendency "'to be against the public good, or to be injurious to the public.'"'" *Scott*, 160 Wn.2d at 851 (quoting *King v. Riveland*, 125 Wn.2d 500, 511, 886 P.2d 160 (1994) (quoting *Marshall*, 62 Wn. App. at 216)). Therefore, whether something can be a source of public policy in the context of contract enforceability should depend on whether it is primarily intended to promote the public good or protect the public from injury, and whether it was issued by an entity with the legal power and authority to set public policy in the relevant context.

Because "the Supreme Court['s power] to regulate the practice of law is inviolate," this court has legal authority to set public policy in the context of attorney ethics. *Kommavongsa v. Haskell*, 149 Wn.2d 288, 311, 67 P.3d 1068 (2003). The RPCs are clearly directed at promoting the public good and preventing public injury:

> The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. . . . Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.

MODEL RULES pmbl. para. 12. It would also make little sense to say that a judicial decision in a particular case may set public policy, but a carefully drafted set of ethical rules promulgated by the only body with the authority to set such rules may

not. It is therefore possible, as a general matter, to find principles of public policy relevant to the enforceability of contracts in the RPCs.

        b)    We do not hold that every RPC violation necessarily renders every contract connected to the violation is voidable in all circumstances

Just because the RPCs can be a valid source of public policy does not mean that every violation of every RPC that relates a contract renders the contract unenforceable. The underlying inquiry in determining whether a contract is unenforceable because it violates public policy is whether the contract itself is injurious to the public. While all RPC violations are in some way injurious to the public, not all RPC violations will render any related contract injurious to the public.

Some RPCs are generally unsuitable for this context altogether because they are unlikely to be relevant, or because they are discretionary or aspirational, encouraging certain activities without prohibiting or condemning a particular course of action. *E.g.*, former RPC 2.1 (1985) ("In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation."); former RPC 6.1 (2003) ("A lawyer should aspire to render at least thirty (30) hours of pro bono public service per year."). As to those RPCs that can be suitable in this context, under some circumstances, an RPC violation may have some relation or connection to a contract,

but the contract itself does not violate the public policy announced in the rule, and so is still enforceable.

We explicitly recognize that a contract is not automatically unenforceable based solely on the fact that it has some connection to some RPC violation. Such a holding would shift the guiding inquiry from whether the *contract* is injurious to the public to whether the *RPC violation* is injurious to the public—the former is relevant when determining whether a contract is unenforceable because it violates public policy, while the latter is relevant in attorney disciplinary proceedings. It would also ignore the clear admonishment that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." MODEL RULES Scope para. 20.

        c)    We reaffirm that a contract entered in violation of former RPC 1.8(a) is presumptively, but not necessarily, unenforceable

While certainly not true of all RPCs, former RPC 1.8(a)'s requirements are mandatory, clear, and go directly to the formation and terms of business transactions, including contracts, between attorneys and their clients. The public policy underlying former RPC 1.8(a) is to guard against "overreaching when the lawyer participates in a business, property or financial transaction with a client," a possibility created by the "lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client." MODEL RULES R.

1.8 cmt. 1. Former RPC 1.8(a)'s safeguards address the terms and procedures by which such transactions are entered in order to promote its underlying public policy.

A contract formed in violation of former RPC 1.8(a), by definition, includes at least one attorney and one current client as parties to the contract and, by definition, meets at least one of the following criteria:

- Its terms are unfair to the client, former RPC 1.8(a)(1);

- Its terms are unreasonable as to the client, *id.*;

- Its terms were not fully disclosed to the client, *id.*;

- Its terms were not transmitted to the client in writing in a way the client can reasonably understand them, *id.*;

- The client had no reasonable opportunity to seek independent advice on the contract, former RPC 1.8(a)(2); or

- The client never consented to the contract, former RPC 1.8(a)(3).

There is no way to enter a contract in violation of former RPC 1.8(a) without implicating the formation or terms of the contract itself. Therefore, a violation of the rule presumptively, though not necessarily, results in a contract violative of the public policy underlying former RPC 1.8(a).

A contract entered in violation of former RPC 1.8(a) may still be enforced where it is shown, based on the specific factual circumstances that, notwithstanding the violation, the contract itself does not contravene the public policy underlying former RPC 1.8(a):

> To justify a transaction with a client, the attorney has the burden of showing: "(1) there was no undue influence; (2) he or she gave the client exactly the same information or advice as would have been given by a disinterested attorney; and (3) the client would have received no greater benefit had he or she dealt with a stranger".

*In re Disciplinary Proceeding Against McMullen*, 127 Wn.2d 150, 164, 896 P.2d 1281 (1995) (quoting *In re Disciplinary Proceeding Against McGlothlen*, 99 Wn.2d 515, 525, 663 P.2d 1330 (1983)).

We do not purport to set out any all-encompassing rule for how violation of any RPC in connection with a contract might affect that contract's enforceability. We simply reaffirm that a contract entered in violation of former RPC 1.8(a) may not be enforced unless it can be shown that notwithstanding the violation, the resulting contract does not violate the underlying public policy of the rule.

      d)    *Hizey* is neither controlling nor persuasive authority on this issue

Unquestionably, the RPCs do not purport to set a standard for civil liability. *Hizey v. Carpenter*, 119 Wn.2d 251, 258, 830 P.2d 646 (1992); RPC scope para. 20. In a legal malpractice action, it is thus inappropriate to suggest or argue that an attorney's violation of one or more RPCs evidences the attorney's alleged breach of the applicable standard of care. *Id.* at 265-66. We do not depart from or disapprove of this long-standing rule in our decision today because it does not apply directly and its reasoning is inapposite in this context.

42

By its own terms, *Hizey* is not controlling as to the issue presented here: "We realize courts have relied on the [former Code of Professional Responsibility] and RPC for reasons other than to find malpractice liability and our holding today does not alter or affect such use." *Id.* at 264. The RPCs do not set the professional standard of care applicable in a legal malpractice action, but the professional standard of care applicable in a legal malpractice action also does not set the standard for the public policy exception to enforceability applicable in a contract action.

The reasoning underlying *Hizey* also does not have much persuasive value in this context. While *Hizey* draws a distinction between statutes that may be used as evidence of negligence and ethical rules adopted by this court to regulate the practice of law, *id.* at 261, as discussed above, that distinction is not determinative as to whether something might be a source of public policy relevant to the enforceability of contracts.

*Hizey* also expressed concern that the RPCs "provide only vague guidelines" as to the professional standard of care in a legal malpractice action, particularly because the RPCs set only minimum standards, rather than the conduct a reasonable lawyer would engage in under specific circumstances. *Id.* at 261-62. Whether a contract was entered in violation of former RPC 1.8(a) does not depend on whether the attorney acted as a reasonable attorney would in similar circumstances—it depends on whether the attorney complied with former RPC 1.8(a)'s mandatory

directives. Whether a contract may be enforced notwithstanding the fact that it was entered in violation of former RPC 1.8(a) is an entirely separate inquiry, noted above, which does not depend on whether the attorney breached the applicable standard of care—it depends on whether the contract actually violates the public policy underlying former RPC 1.8(a).

*Hizey* further holds that use of the RPCs in the legal malpractice context would contravene the purposes of the RPCs, which are to "protect both the public *and* the integrity of the profession." *Id.* at 263. The RPCs serve that second purpose "'by forcefully reminding attorneys that their first loyalty is to the court.'" *Id.* (quoting Jean E. Faure & R. Keith Strong, *The Model Rules of Professional Conduct: No Standard for Malpractice*, 47 MONT. L. REV. 363, 375 (1986)). Using the RPCs to determine the professional standard of care applicable in the attorney malpractice context, *Hizey* holds, elevates the attorney-client relationship over the integrity of the profession. *Id.* This is certainly a potential concern where the attorney's duties to the client may conflict with his or her duties to the court, and the rules in question are designed "to temper an attorney's zeal in representing his clients." Faure & Strong, *supra*, at 375 (discussing former Montana Rules of Professional Conduct 1.6(b) (1984) (governing confidentiality of information related to client representation), 3.3 (1984) (requiring disclosure of authority adverse to the client's position)). Former RPC 1.8(a) is designed to temper the attorney's zeal in entering

business transactions with clients, not representing them. Compliance with former RPC 1.8(a) serves both the client and the integrity of the legal profession, and noncompliance has the potential to damage both the client and the profession.

*Hizey* provides an admirable analysis of the issue that was before the court. The issue before the court today, however, is not controlled by *Hizey*, and the reasoning in *Hizey* does not apply here.

e)      We respectfully disagree with the dissent's remaining concerns

The dissent describes this case as presenting an issue of first impression: "Whether the RPCs can justify rescission of a third party contract." Dissent at 4. While this case certainly presents the application of several principles of law to a particular set of facts, it does not present an issue of first impression. That a contract entered in violation of former RPC 1.8(a) may be unenforceable as violative of public policy was a settled issue before this case. It is also already a settled issue that a contract that violates public policy is unenforceable in the courts. Finally, the fact that a contract that is inextricably intertwined with an unenforceable contract is also unenforceable was a settled issue before this case. Although we are confronted with an unusually convoluted set of facts, we are not breaking new legal ground.

We do not need to address, analyze, approve of, or disapprove of *In re Corporate Dissolution of Ocean Shores Park, Inc.*, 132 Wn. App. 903, 134 P.3d 1188 (2006), *review denied*, 159 Wn.2d 1009, 154 P.3d 918 (2007). *Ocean Shores*

is a Court of Appeals opinion not binding on this court, and a party's choice as to which authorities to rely on in its briefing does not limit the authorities the court may rely on. We do not rely on *Ocean Shores*.

To the extent that the dissent asserts that the RPCs are simply too complicated for trial courts and juries, we respectfully disagree.[21] The judges in the trial courts of this state have a long history of grappling with difficult and complicated questions of law with competence, diligence, and integrity, and we are confident they are up to the challenge. The issue of whether a violation of former RPC 1.8(a) should result in professional discipline is not relevant to determining whether a contract is enforceable in light of the public policy implications of that violation.

> 2.    The business transaction contemplated by the joint venture proposal is violative of public policy and unenforceable

The business transaction here was entered in violation of former RPC 1.8(a). Even if the only part of the business transaction that violated former RPC 1.8(a) was Powers' providing TCG with legal services, there can be no question that all the arrangements by which the terms of the joint venture proposal were fulfilled are inextricably intertwined, and neither LKO nor Powers has argued that the provision for legal services is severable from the rest of the business transaction contemplated

---

[21]Because this case comes to this court following a decision on summary judgment, jury issues are not implicated here, but we do note that juries determine the facts and judges determine the law. WASH. CONST. art. IV, § 16. Whether an RPC has been violated is a matter of law. *King*, 170 Wn.2d at 741. Whether a contract is enforceable notwithstanding a violation of former RPC 1.8(a) depends on questions of fact. *See McMullen*, 127 Wn.2d at 164, 168.

by the joint venture proposal. Therefore, the entire business transaction is tainted with Mr. Powers' violation of former RPC 1.8(a). *Cf. Sherwood & Roberts—Yakima, Inc. v. Leach*, 67 Wn.2d 630, 637, 409 P.2d 160 (1965).

As discussed above, while a contract formed in violation of former RPC 1.8(a) is presumptively unenforceable, such a contract may still be enforced where, notwithstanding the violation, the contract itself does not violate the public policy underlying the rule. LKO argues that because the former RPC 1.8(a) issue was not decided at summary judgment and not addressed at trial, LKO was deprived of its opportunity to provide evidentiary support for the enforceability of the business transaction, notwithstanding Mr. Powers' former RPC 1.8(a) violation. LKO is wrong.

Fair and TCG moved for summary judgment at the trial court, arguing any transaction made would be void as violative of public policy because it was entered in violation of former RPC 1.8(a), clearly putting LKO on notice that it should respond on all issues relevant to the enforceability of the transaction under former RPC 1.8(a). LKO and Powers responded that former RPC 1.8(a) does not apply to the facts presented. Any arguments intended to justify the business transaction notwithstanding the former RPC 1.8(a) violation should have been made to the trial court. They were not and will not be considered now.

47

3.     Rescission was an appropriate remedy

Where a contract is entered in violation of public policy, "the rule is to leave the parties in the positions where the court finds them, even if they acted in good faith," *Fallahzadeh v. Ghorbanian*, 119 Wn. App. 596, 605, 82 P.3d 684 (2004), and "regardless of whether the situation is unequal as to the parties," *Morelli v. Ehsan*, 110 Wn.2d 555, 562, 756 P.2d 129 (1988). It is thus arguable that LKO got *more* than that to which it was strictly entitled when the trial court ordered a judgment in its favor for all the funds it had invested in TCG, with both pre- and postjudgment interest. TCG has not sought review of that decision. We also note that while LKO is not responsible for Mr. Powers' violation of former RPC 1.8(a), neither is TCG.

Because the former RPC 1.8(a) violation is sufficient to justify the remedy imposed, we need not determine whether rescission would also be appropriate for the former RPC 1.7 violation. We do not, however, definitively foreclose that potential outcome in the appropriate case.

## IV. CONCLUSION

Neither LKO's nor Powers' rights to procedural due process were violated. The record supports the Court of Appeals' holding that Mr. Powers entered the business transaction contemplated by the joint venture proposal in violation of former RPC 1.8(a), and rescission is the appropriate remedy for that violation under the unusual facts presented. Mr. Powers also violated former RPC 1.7 by engaging

48

in simultaneous representation of multiple clients with adverse interests without making the necessary disclosures or receiving the clients' informed consent. We need not determine whether the former RPC 1.7 violation provides an alternate basis on which to rescind the business transaction contemplated by the joint venture proposal. We affirm the Court of Appeals.

_Fairhurst, J._

WE CONCUR:

_Wiggins, J._

_González, J._

_P.T._

No. 88132-4

GORDON McCLOUD, J. (concurring)—I agree with the majority that Mr.

Powers violated former Rules of Professional Conduct (RPC) 1.8(a) (2000). I also

agree with the majority that, under prior controlling precedent of this court, that

violation supports the remedy of rescission under the undisputed facts presented

here. I therefore join the majority in result.

But I respectfully disagree with many of the views expressed in Parts III.D.1.a

and b. *See* majority at 37-40. I think these sections will produce unnecessary

uncertainty about the circumstances in which the courts will enforce a contract that

is connected to an RPC violation. I believe that those sections are unnecessary to

support the majority's conclusion. I therefore concur.

1

No. 88132-4

Madsen, C.J. (dissenting)—The majority holds that contract rescission was a proper remedy for an attorney's violation of the Rules of Professional Conduct (RPC). These rules, however, were never intended to serve as the basis for civil law actions or remedies. Because using the RPCs in this manner is contrary to both their Scope section and this court's decision in *Hizey*,[1] I dissent.

Paragraph 20 to the RPCs' Scope section reads:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.

Strong policy justifications support the Scope section's preference for separating the law of ethics codes from other civil law decisions. *See* Stephen E. Kalish, *How To Encourage Lawyers To Be Ethical: Do Not Use the Ethics Codes as a Basis for Regular Law Decisions*, 13 GEO. J. LEGAL ETHICS 649 (2000). In *Hizey*, 119 Wn.2d at 263, this court expressed a concern that if ethics violations

---

[1] *Hizey v. Carpenter*, 119 Wn.2d 251, 830 P.2d 646 (1992).

may result in civil actions, attorneys will likely overemphasize their clients'
interests in order to protect themselves from judgments against them. This would
result in attorneys focusing on the interests of their clients to the detriment of
others including the general public. *Hizey* involved a legal malpractice action
against an attorney who allegedly had an impermissible conflict of interest in a
real estate transaction. The court held that in legal malpractice actions, expert
witnesses may neither explicitly refer to the CPR (Code of Professional
Responsibility) nor the RPCs, nor may their existence be revealed to the jury via
instructions. *Id.* at 254.

Based on the Scope section of the RPCs, most courts considering this issue
have held that violations of the CPR or RPCs do not give rise to an independent
cause of action against the attorney. *Id.* at 258-59. The *Hizey* court noted that

> [t]he result of such holdings, with which we concur, has been that
> breach of an ethics rule provides only a public, *e.g.*, disciplinary,
> remedy and not a private remedy. Because the CPR and RPC
> explicitly, and in what we deem to be clear and unambiguous
> language, disclaim any intent to create civil liability standards, we
> refuse to hold their violation creates a cause of action for
> malpractice.

*Id.* at 259 (citations omitted).

In addition to the admonition of the Scope section to the RPCs, the *Hizey*
court also noted public policy grounds for separating disciplinary actions from
civil actions. The CPR and RPCs are not statutes or administrative regulations.
They were adopted by this court, rather than the legislature, pursuant to our power

to regulate the practice of law. *Id.* at 261. The Supreme Court has the inherent power and sole jurisdiction to regulate the practice of law. *Id.* (citing *Graham v. State Bar Ass'n*, 86 Wn.2d 624, 631, 548 P.2d 310 (1976)).

Furthermore, the CPR and RPCs often contain only vague guidelines since they were never intended to be the basis for civil liability. *Id.* There are differences between a civil action and disciplinary action, which advise against the use of the RPCs in this manner. For example, lawyers can be disciplined even if they do not cause damage. *Id.* at 262 (quoting 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 1.9, at 33 (3d ed. 1989)). Moreover, the use of the rules in civil actions throws off the balance they intend to create and instead misaligns lawyer incentives. Using the RPCs as the basis for civil liability overemphasizes the attorney/client relationship over other important responsibilities such as those to the legal system at large. *Id.* at 263 (quoting Jean E. Faure & R. Keith Strong, *The Model Rules of Professional Conduct: No Standard for Malpractice*, 47 MONT. L. REV. 363, 375 (1986)). Finally, plaintiffs already have other available theories under which to bring malpractice actions. *Id.* at 263-64 (collecting cases).

The *Hizey* court held that experts and judges could rely on the CPR and RPCs but could not specifically refer to them. *Id.* at 265. The court "realize[d] courts have relied on the CPR and RPC for reasons other than to find malpractice liability and our holding today does not alter or affect such use." *Id.* at 264.

-3-

Although *Hizey* did not definitively foreclose future courts from using the RPCs as the basis for civil actions, it does indicate this court's desire to keep separate disciplinary and civil actions rather than follow the *Restatement*'s approach which conflates the two. *See* Kalish, *supra*, at 662; RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (Proposed Final Draft No. 2 1998).

One of the principal cases cited by The Collection Group LLC (TCG) to justify rescission is *In re Corporate Dissolution of Ocean Shores Park, Inc.*, 132 Wn. App. 903, 134 P.3d 1188 (2006). The majority in this case, however, declines to meaningfully address either *Ocean Shores* or *Hizey*. Whether the RPCs can justify rescission of a third party contract is an issue of first impression for this court. The majority has missed an opportunity to thoughtfully consider this issue.

In *Ocean Shores*, a couple deeded real property to a corporation. When issuing shares, the attorney deeded some shares to himself and his wife. He later died, and his clients sued his widow to void the land transfer and dissolve the corporation. The Court of Appeals held that the issuance of shares was void as against public policy if the attorney violated the RPCs by failing to give adequate advice and consideration. The case was remanded for a determination of whether the attorney could produce evidence to avoid summary judgment in favor of the clients. *Id.* at 906.

-4-

The Court of Appeals held that agreements violating the RPCs are contrary to public policy. *Id.* at 910 (citing *Danzig v. Danzig*, 79 Wn. App. 612, 617, 904 P.2d 312 (1995)). "Courts generally do not enforce contracts that are contrary to public policy." *Id.* (citing *Danzig*, 79 Wn. App. at 616). *Ocean Shores* appears to stand for the proposition that transactions that occur in violation of the RPCs are generally void as against public policy and may be rescinded even to the detriment of innocent third parties. *Ocean Shores*, however, relies heavily on *Danzig*, which indicated reluctance to use rescission as a remedy to an RPC violation when it would deprive a third party of the benefit of his bargain.

In *Danzig*, a lay "runner" who solicited clients for an attorney filed a breach of contract claim against the attorney for failing to pay him. The trial court dismissed his contract claim but ordered the attorney to pay $89,000 into the court's registry pending investigation of the propriety of the fee. The Court of Appeals reversed the trial court's dismissal of the contract claim and reversed the order to pay money into the court registry. *Danzig*, 79 Wn. App. at 615. The Court held that the contract was not void as against public policy under the specific facts of the case. *Id.* at 618-19.

As the *Danzig* court observed,

> "[A] superior court lacks authority to conduct disciplinary proceedings. It has, of course, the authority and duty to see to the ethical conduct of attorneys in proceedings before it. Upon proper grounds, it can disqualify an attorney. It has the power to punish for contempt. *But as to matters which do not affect those proceedings, the disciplinary power rests exclusively in* [the Supreme Court]."

-5-

*Danzig*, 79 Wn.App. at 620 (first alteration in original) (quoting *Hahn v. Boeing Co.*, 95 Wn.2d 28, 34, 621 P.2d 1263 (1980)).[2]

The court's decision to reverse the $89,000 payment rested, in part, on the fact that the trial court was not attempting to fashion a proper remedy or policing the conduct of an attorney in an action before it. Instead, the court was attempting to discipline the attorney for his conduct. "The superior court did not have authority to do so; that power rests exclusively with the supreme court. Thus, the superior court did not have cognizance of this type of case." *Id.* at 621.

In my view, *Ocean Shores* stretched *Danzig* too far, improperly stepping back from this court's decision in *Hizey*, which intended to keep separate the law of ethics codes from civil law actions.

In this case, the majority affirms rescission as the proper remedy for Leslie Powers' former RPC 1.8 (2000) violation. Due in part to LK Operating's (LKO) investment funding and arrangement of legal services, TCG's value increased from the original cash investment to approximately $1.5 million. "Under the principle of freedom to contract, parties are free to enter into, and courts are generally willing to enforce, contracts that do not contravene public policy." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn. 2d 171, 176, 94 P.3d 945 (2004). "'In general, a contract which is not prohibited by statute, condemned by

---

[2] While *Eriks v. Denver*, 118 Wn.2d 451, 462, 824 P.2d 1207 (1992), allows trial courts to disgorge fees from attorneys who have violated the RPCs, *Danzig* plainly rejects trial court actions that are disciplinary in nature. *Danzig*, 79 Wn. App. at 620-21.

judicial decision, or contrary to the public morals contravenes no principle of public policy.'" *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984) (quoting 17 C.J.S. *Contracts* § 211, at 1024 (1963)). Rescission improperly prevents LKO from realizing the benefit of its bargain. The lawful contract between LKO and TCG should not have been invalidated based on a third party attorney's purported violation of the RPCs. There is no basis in the law for such a remedy.

In blurring the lines between this court's disciplinary authority and trial courts' civil decision making, the majority undoubtedly creates confusion for both judges and practitioners. The majority's complicated analysis of the purported RPC violations spans many pages, yet it is unclear whether such decisions will be left to judges or juries. It is unreasonable to expect a jury to perform such an analysis, especially in light of *Hizey*'s directive that juries be shielded from the particulars of the RPCs. It is equally untenable to expect a trial judge to determine if an RPC violation has occurred when such disciplinary discretion is vested solely in this court. The unfortunate effect of the majority is to leave more questions unanswered than resolved.

## Conclusion

This court's decision in *Hizey* as well as the Scope section to the RPCs provide strong policy reasons to separate the law of ethics codes from civil actions. Although the majority relies on public policy grounds to justify

rescission, the public policy in this case favors maintaining the separation between attorney discipline and civil actions. Because rescission is an improper remedy for Powers' purported RPC violation, I dissent.

Madsen, C.J.